UNITED STATES of America, Appellee,

v.

Peter J. PARKINS, also known as Oliver Douce, Defendant–Appellant.

No. 1439, Docket 93–1590.

United States Court of Appeals, Second Circuit.

Argued April 12, 1994.

Decided May 26, 1994.

Michael Young, New York City, for defendant-appellant.

George S. Canellos, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., New York City, Nelson W. Cunningham, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before: MINER, JACOBS, Circuit Judges, and MISHLER*, District Judge.

JACOBS, Circuit Judge:

Defendant is a citizen of Jamaica named Oliver Douce who, for various purposes, uses the name Peter Parkins. Parkins pleaded guilty in the United States District Court for the Southern District of New York (Kram, *J.*) to one count of wilfully and falsely representing himself to be a citizen of the United States in violation of 18 U.S.C. § 911. He now asks that his conviction be vacated and

* The Honorable Jacob Mishler of the United States District Court for the Eastern District of New York, sitting by designation.

that he be allowed to withdraw his plea on the ground that the plea allocution violated the requirements of Fed.R.Crim.P. 11. Specifically, Parkins claims that the district court failed to inform him of and ensure that he understood (i) the nature of the offense to which he was pleading; (ii) his right to subpoena witnesses at trial; (iii) the impact of 18 U.S.C. § 3585(a), which effectively required Parkins's federal sentence to run consecutively to any state sentence he might have to serve; and (iv) his right to be represented by appointed counsel at trial.

We reject each of Parkins's arguments and therefore affirm the judgment of conviction.

## BACKGROUND

Parkins falsely identified himself as a United States citizen named Peter Parkins when he was arrested on April 27, 1993 for assaulting a Deputy United States Marshal. Parkins made that misrepresentation both to the Deputy United States Marshals who processed and fingerprinted him and to the Probation Officer who conducted his pretrial interview. Later, the authorities discovered Parkins's real name (Douce) and true citizenship (Jamaican), and that he was on parole from state prison at the time of his arrest. As it turned out, Parkins had also told state authorities that he was a United States citizen.

On July 9, 1993, Parkins and the government executed a plea agreement by which Parkins undertook to plead guilty to one count of "unlawfully, wilfully, knowingly and falsely representing himself to be a citizen of the United States." In exchange, the government agreed that it would not prosecute Parkins on the assault charge. After signing the plea agreement, Parkins waived indictment and pleaded guilty to a one-paragraph Information reciting Parkins's false claim to United States citizenship.

At the plea hearing on the same day, the district court ascertained that Parkins was competent to plead guilty, that he had discussed his case fully with his attorney, and that he was satisfied with his attorney's representation. Parkins confirmed his understanding that, if he were dissatisfied with his attorney, the court would assign other counsel at no cost to him. The district court then informed Parkins that, by pleading guilty, he would waive certain constitutional rights. Parkins indicated that he understood.

The district court next set out to confirm that Parkins understood the nature of the charge against him:

The Court: You have received a copy of the information?

Parkins: Yes, your Honor.

The Court: And you have read it?

Parkins: Yes, your Honor.

The Court: Do you understand it?

Parkins: Yes, your Honor.

The Court: You have discussed it with your lawyer?

Parkins: Yes, your Honor.

The Court: Do you want me to read it to you now?

Parkins: Okay, you don't have to.

The district court advised Parkins that the charge to which he was pleading carried a maximum prison term of three years, a maximum fine of $250,000, a maximum supervised release term of one year and a $50 special assessment. The court also informed Parkins that he may be subject to deportation.

At that point in the plea proceeding, the Assistant United States Attorney asked the district court to advise Parkins that he had a right to the appointment of counsel if he chose to proceed to trial, as well as the right to subpoena witnesses for trial. The district court replied, "I thought I had advised him of that. . . . I think I advised the defendant, if he is not satisfied with counsel, other counsel can be appointed for him at no cost to him."

The district court then asked Parkins to explain in his own words how he had violated the law. Parkins recited that he is a Jamaican citizen named Oliver Douce and that he had repeatedly advised authorities that he was a United States citizen by the name of Peter Parkins. The district court inquired, "And you were deliberately lying to these officials?" to which Parkins responded, "Yes, your Honor." The district court then accepted Parkins's guilty plea, finding that he was

competent to plead, that he knew his rights, and that the plea was voluntary.

At a subsequent proceeding, Parkins was sentenced to three months of imprisonment, one year of supervised release, and a $50 special assessment. At that time, Parkins was already in state custody on a charge of violating the terms of his parole by falsely representing that he was a United States citizen. After pleading guilty to the parole violation and spending five months in a state prison, Parkins was transferred to federal custody and began serving his federal sentence.

## DISCUSSION

Rule 11 reads in pertinent part:

(c) Before accepting a plea of guilty ..., the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, ... and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term ...; and

&ast; &ast; &ast; &ast; &ast; &ast;

(3) that the defendant has ... the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination....

Fed.R.Crim.P. 11(c).

■ This Court requires strict adherence to the mandates of Rule 11. *See United States v. Renaud,* 999 F.2d 622, 624 (2d Cir.1993); *United States v. Lora,* 895 F.2d 878, 880 (2d Cir.1990); *United States v. Rossillo,* 853 F.2d 1062, 1065 (2d Cir.1988); *United States v. Journet,* 544 F.2d 633, 636 (2d Cir.1976). While Rule 11(h) provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded," this "Harmless Error" provision encompasses only "such minor errors as a modest understatement of the maximum penalty, where the penalty actually imposed did not exceed the maximum as erroneously represented by

the court." *Renaud,* 999 F.2d at 624–25 (citing 1983 Advisory Committee Note to Fed.R.Crim.P. 11). Our approach to Rule 11 requires that we examine critically even slight procedural deficiencies to ensure that the defendant's guilty plea was a voluntary and intelligent choice, and that none of the defendant's substantial rights have been compromised.

### Nature of the Charged Offense

■ Parkins denies that he was properly informed concerning the nature of the charge to which he was pleading guilty, as required by Rule 11. This argument gives us pause because the transcript of the plea hearing does not in itself conclusively demonstrate that Parkins was aware of the precise nature of his crime. When asked by the district court to describe how he had violated the law, Parkins stated that he had deliberately lied about his identity to various state and federal officials:

[I]n December 1990, in connection with the state arrest, I told a Westchester probation officer that I was a U.S. citizen named Peter Parkins. In October 1992, upon being released upon parole, I told a New York Department of Corrections officer that I was a citizen named Peter Parkins. On April 19, 1993, when I was arrested, I told a U.S. marshal that I was a U.S. citizen named Peter Parkins. And in April 1993, when arrested, I told a pretrial services officer that I was a U.S. citizen named Peter Parkins. And I knew when I said these things that I was really a Jamaican by the name of Oliver Douce.

According to the government, this recitation evidences Parkins's understanding that his crime was his false claim to citizenship. However, Parkins's statement, viewed in isolation, is just as consistent with a belief that he stood accused of lying about his name or about his identity. While use of an alias in these circumstances may constitute a material false statement in violation of 18 U.S.C. § 1001, Parkins was charged with—and pleaded guilty to—a different offense. Parkins's attorney argues that Parkins may have believed that his status as a permanent resi-

dent alien conferred upon him some attributes of U.S. citizenship.

Whatever may have been going on in Parkins's mind, his statement by itself is insufficiently clear to satisfy us that he understood the nature of the crime with which he was charged. However, we do not examine Parkins's statement in isolation. Considering the entire record before us, there can be no question that Parkins was aware that he was pleading guilty to having lied about his citizenship. The Information to which he pleaded guilty described his offense in a simple, single paragraph:

> From in or about December 1990 through on or about April 29, 1993, in the Southern District of New York and elsewhere, the defendant, PETER PARKINS, a/k/a "Oliver Douce," unlawfully, wilfully, knowingly and falsely did represent himself to be a citizen of the United States, namely, the defendant, PETER PARKINS, a/k/a "Oliver Douce," represented to a Westchester County Probation Officer, a New York State Department of Correctional Services Officer, a United States Pre–Trial Officer and Deputy United States Marshals that he was a citizen of the United States born in New York.

While this Information identifies the defendant as "PETER PARKINS, a/k/a 'Oliver Douce,'" it plainly describes the offense as "unlawfully, wilfully, knowingly and falsely ... represent[ing] himself to be a citizen of the United States." Moreover, Parkins signed a plea agreement describing the charge in the Information as "unlawfully, wilfully, knowingly and falsely representing himself to be a citizen of the United States." When Parkins declined the district court's offer to read the Information at the plea hearing, he acknowledged that he had read it, understood it, and discussed it with his attorney. These circumstances show Parkins's lucid understanding that his offense was misrepresenting his *citizenship* rather than his name or some other aspect of his identity. This conclusion is reinforced by how few and simple are the elements of the offense.

### Right to Subpoena Witnesses

■ Parkins's claim that the district court failed to inform him of his right to subpoena witnesses at trial is meritless. The Sixth Amendment guarantees the right of a criminal defendant "to have compulsory process for obtaining witnesses in his favor." Rule 11, however, does not require the court to apprise a defendant concerning all procedural aspects of the trial that the defendant agrees to forgo. Rule 11 lists the advices and caveats that are required to be given, and the right to subpoena witnesses is not among them.

### Impact of 18 U.S.C. § 3585(a)

■ Parkins began serving his federal sentence after he completed his state sentence, as required by the operation of 18 U.S.C. § 3585(a): "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." The district court was aware at the plea hearing and at the sentencing hearing that Parkins was being held in state custody. Parkins contends that the district court therefore should have advised him that this provision would in effect make Parkins's federal sentence consecutive to any state sentence he might serve prior to surrendering to federal custody.

The district court was not required to explain to Parkins the impact that § 3585(a) might have on him. "Certain possible consequences of a guilty plea are 'collateral' rather than direct and need not be explained to the defendant in order to ensure that the plea is voluntary." *United States v. U.S. Currency in the Amount of $228,536.00,* 895 F.2d 908, 915 (2d Cir.), *cert. denied,* 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990). In *U.S. Currency,* we stated in dictum that "whether a federal sentence runs concurrently or consecutively to a state sentence" was an example of a collateral consequence. *Id.* While § 3585(a) may in effect lengthen Parkins's time in jail, it does not lengthen the *federal* sentence, or directly affect it in any other way. *See Kincade v. United States,* 559 F.2d

906, 909 (3d Cir.) (per curiam) (using same analysis when federal sentence runs consecutively to state sentence due to operation of 18 U.S.C. § 3568), *cert. denied,* 434 U.S. 970, 98 S.Ct. 519, 54 L.Ed.2d 458 (1977). We now join those Circuits that have expressly held that the sentencing court need not advise defendants as to whether a federal sentence will run consecutively to, rather than concurrently with, a state sentence. *See United States v. Ray,* 828 F.2d 399, 418 (7th Cir. 1987) (noting that this view has already been adopted in the Third, Fourth, Fifth, Eighth, and Tenth Circuits), *cert. denied,* 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988).

***Right to Counsel at Trial***

■ Rule 11(c)(3), in part, directs the district court to apprise a defendant of his right to be represented by counsel at trial. Parkins contends that, although the district court informed him that new counsel could be assigned were he dissatisfied with his present attorney, he was never told that he would be entitled to appointed counsel *at trial* if he elected to plead not guilty. Given the circumstances of this case, our decision in *United States v. Saft,* 558 F.2d 1073, 1080 (2d Cir.1977), resolves this issue against Parkins. The district court never used the specific wording of Rule 11(c) to inform Parkins that, if he went to trial, he had "at that trial the right to the assistance of counsel"; but the court did tell Parkins that new counsel would be appointed if he was unhappy with his present counsel. The district court also put to Parkins the following question: "Do you understand that, at [your trial] ... your attorney could cross-examine witnesses for the government, object to evidence offered by the government and offer evidence in your behalf?" Parkins answered, "Yes, your Honor." Moreover, counsel had already been appointed for Parkins, and was present at the plea hearing. Under similar circumstances, we said in *Saft:* "In contrast to a defendant with retained counsel who might worry that his money might run out before or during trial, Saft had already been assigned counsel, and there was no suggestion that counsel would abandon him if he went to trial." *Saft,* 558 F.2d at 1080. It is just as clear in this case that the defendant understood his right to counsel at trial, and that he voluntarily waived that right by pleading guilty.

**CONCLUSION**

For the foregoing reasons, we reject each of Parkins's arguments and affirm the district court's judgment of conviction.