**UNITED STATES of America,**
Appellee,

v.

**Scott TORRELLAS, Defendant–**
**Appellant.**

**Docket No. 05–0975–CR.**

United States Court of Appeals,
Second Circuit.

Argued: Feb. 16, 2006.

Decided: July 11, 2006.

Jason P.W. Halperin, Assistant United States Attorney, New York, NY, (Michael J. Garcia, United States Attorney for the Southern District of New York, John M. Hillebrecht, Assistant United States Attorney, New York, NY, on the brief), for Appellee.

Howard M. Simms, New York, NY, for Defendant–Appellant.

Before KEARSE and SACK, Circuit Judges, and STANCEU, Judge *.

KEARSE, Circuit Judge.

Defendant Scott Torrellas appeals from a judgment entered in the United States *District Court for the Southern District of* New York following his plea of guilty before Colleen McMahon, *Judge,* convicting him of possession of stolen firearms, in violation of 18 U.S.C. §§ 922(j) and 2, and sentencing him principally to 56 months' imprisonment, to be followed by a three-year term of supervised release. On appeal, Torrellas contends principally (a) that the district court failed to determine in accordance with Fed.R.Crim.P. 11 that Torrellas, who suffered from a memory impairment at the time of his plea of guilty in June 2004, understood the nature of the charge against him, and (b) that there was an insufficient basis for the court to determine that his plea was knowing and voluntary. Torrellas also contends that the court imposed inconsistent alternative sentences. Although we note that the judg-

* Honorable Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

ment contains a typographical error in the spelling of Torrellas's surname, and we instruct that that error be corrected, we find no basis for disturbing the substance of the judgment.

## I. BACKGROUND

There is no dispute as to the factual background of this case. In the fall of 2001, local law enforcement agents in Dutchess County, New York, were investigating a series of burglaries in the area. On November 2, 2001, Torrellas's wife contacted the Dutchess County Sheriff's Office ("Sheriff's Office") and reported that there were a number of stolen items in the Torrellas residence. Members of the Sheriff's Office promptly searched Torrellas's home and discovered items similar to property that had been reported stolen. Torrellas was arrested.

Following his arrest on November 2, 2001, Torrellas admitted to officers of the Sheriff's Office, in a tape-recorded session, that he had committed many larcenies during a span of several years. These included thefts in September 2001 of a variety of firearms from lockers of members of a nearby gun club at which he had been employed.

In February 2002, Torrellas was indicted on state-law charges of, *inter alia,* robbery, burglary, and criminal possession of stolen property. He eventually pleaded guilty in May 2004 to one count of robbery in the first degree and was sentenced in July 2004 principally to a 72–month term of imprisonment (the "state sentence").

### A. *The Federal Indictment and the Competency Proceedings*

The present prosecution was commenced in May 2002, when a federal grand jury handed down a one-count indictment charging Torrellas with offenses relating to the firearms taken from the gun club. The indictment alleged that, in violation of 18 U.S.C. §§ 922(j) and 2,

[i]n or about September 2001, in the Southern District of New York, SCOTT TORRELLAS, the defendant, unlawfully, knowingly and willfully received, possessed, concealed, stored, bartered, sold and disposed of stolen firearms and stolen ammunition, ... knowing and having reasonable cause to believe that the firearms and ammunition were stolen, to wit, SCOTT TORRELLAS, while working as an employee at the Pawling Mountain Club in Pawling, New York, purposefully and without authority stole firearms and ammunition ... from the lockers of club members and retained such firearms and ammunition for his own use.

When this indictment was filed, Torrellas was in state custody. Produced in federal court pursuant to a writ of habeas corpus *ad prosequendum* in May 2002, he initially entered a plea of not guilty to the federal charge. Federal pretrial proceedings were begun but they, like the state proceedings, were soon delayed by unfortunate events following Torrellas's return to state custody.

In June 2002, while in state custody, Torrellas was seriously injured when another inmate struck him in the head. As a result, Torrellas suffered memory loss and had some difficulty speaking. The district court therefore ordered that Torrellas undergo medical and psychiatric examination to determine whether he was competent to understand the nature and consequences of the proceedings against him and to assist in his defense.

Apparently, several evaluation reports followed. A March 2003 report indicated that Torrellas's injuries prevented him from communicating with others. The government conceded that Torrellas was

not then fit to stand trial. The court ordered further evaluation.

A December 31, 2003 evaluation report, however, concluded that Torrellas did not suffer from a mental disease or defect that rendered him unable to understand the nature of the proceedings against him. That report opined that Torrellas was malingering and essentially feigning the extent of his injuries. At a pretrial hearing shortly thereafter, Torrellas's attorney noted his own observation that Torrellas's condition had improved somewhat, and he requested and was granted an adjournment to permit a defense expert to review the December 2003 report. (*See* Hearing Transcript, January 15, 2004 ("Jan.2004 Competency Tr."), at 2–3.) Defense counsel thereafter sought an additional extension of time to permit his expert to make a thorough assessment of the December 2003 report. The district court granted that request, stating that

> if your expert concludes that the report that I have received is flawed or incorrect and you want to contest the findings ... that your client is competent to stand trial and that he is malingering, ... we will have a hearing into that.

(Hearing Transcript, February 11, 2004 ("Feb.2004 Competency Tr."), at 3.)

Following completion of the defense expert's review, Torrellas did not seek a hearing, and he raised no further issue as to his ability to understand the charge or the nature of the proceedings against him. Instead, by letter dated June 10, 2004, his counsel informed the court that Torrellas was prepared to plead guilty to the charge of possession of firearms and ammunition that he had stolen from the gun club lockers. (*See* Letter from Torrellas's attorney Paul E. Davison to Judge McMahon dated June 10, 2004, at 1–2 ("Torrellas Letter").) Further, adverting to the fact that Torrellas had been "assaulted and injured by other inmates at the Westchester County Jail in June, 2002, and he has experienced memory loss and other complications since that incident" (*id.* at 1 n. 1), Torrellas's attorney proposed that the court determine the factual basis for Torrellas's plea of guilty by listening to the tape-recorded confession given by Torrellas to members of the Sheriff's Office shortly after his arrest in November 2001 ("Confession Tape"):

> As requested, I am writing to set forth what we believe to be the appropriate procedure in view of the fact that Mr. Torrellas has no current recollection of the conduct set forth in the indictment.
>
> Rule 11(b)(3), Fed.R.Crim.P., requires the court to "determine that there is a factual basis for the plea." Significantly, this portion of the rule—unlike subsections (b)(1) [rights and warnings] and (b)(2) [voluntariness]—does **not** require the court to address the defendant personally or to ascertain the factual basis from the defendant himself.
>
> Instead, "so long as the facts relied on are placed on the record at the time of the plea, the district court, in determining whether there was a factual basis for the plea, is free to rely on any facts at its disposal—not just the admissions of the defendant." *United States v. Maher*, 108 F.3d 1513, 1524–25 (2d Cir.1997)[internal quotations omitted.] The factual basis inquiry can "be made of the defendant, of the attorneys for the government and the defense ... or by whatever means is appropriate in a specific case." *Id.*, 108 F.3d at 1524, *quoting* Fed.R.Crim.P. 11 Advisory Committee Note (1974).
>
> In this case, the factual basis for defendant's guilty plea can be amply established by a tape-recorded interview that Mr. Torrellas gave to the Dutchess

County Sheriff's Department on November 2, 2001. The instant indictment charges Mr. Torrellas with possession of firearms and ammunition which he stole from the lockers of club members at the Pawling Mountain Club, in violation of 18 U.S.C. § 922(j). During the November 2 interview, Mr. Torrellas was specifically questioned about the theft of the firearms, and he admitted having taken the firearms from lockers at the Club during the course of his employment there.

We propose to play an excerpt of the recorded November 2, 2001 interview to establish the factual basis for the defendant's plea in accordance with Rule 11(b)(3). Although Mr. Torrellas has no current recollection of the subject matter of this recording, the tape is a classic recorded recollection admissible under Rule 803(5), Fed.R.Evid.

(Torrellas Letter at 1–2 (emphasis and emendations in original) (footnote omitted).)

B. *The Plea Proceedings*

On June 15, 2004, Torrellas entered a plea of guilty to the charge set forth in the federal indictment. At the outset of the plea hearing, the district court stated its understanding

> that the factual basis for the defendant's guilty plea will be established in this instance by a tape recording that was made on the evening of the defendant's arrest when he was asked questions at the Dutchess County Sheriff's department and gave answers to same.

(Plea Transcript, June 15, 2004 ("Plea Tr."), at 3.) Upon inquiry by the court as to whether that procedure was satisfactory, the government answered in the affirmative, as did defense counsel, who stated, "Indeed, since we suggested it, your Honor, it is satisfactory." (*Id.*)

Before accepting the plea, the district court questioned Torrellas to determine, *inter alia*, whether he was competent to plead and whether he understood the nature of the charge against him. (*See id.* at 3–5.) With respect to the elements of the offense with which Torrellas was charged, the plea colloquy included the following:

> [THE COURT:] Now, Mr. Torrellas, the crime that you are charged with is unlawfully, knowingly and willfully receiving firearms shipped in interstate commerce, knowing and having reasonable cause to believe that the firearms and ammunition were stolen. That's the crime.

(*Id.* at 5–6.) The court added, "I gather that the accusation is that Mr. Torrellas unlawfully possessed" shotguns and a pistol "which were registered to other people." (*Id.* at 7.)

The court inquired whether Torrellas understood that he had the right to appeal from his sentence, to proceed to trial rather than plead guilty, and to have a speedy and public trial, to which Torrellas responded, "Yes," "Yeah," and "Oh, yeah." (Plea Tr. 9.) The court also inquired as to, *inter alia*, Torrellas's education and whether he was under the influence of alcohol or medications (*see id.* at 5, 16–18); the court informed Torrellas of the maximum punishment that could be imposed, asking Torrellas to let the court know if there was anything he did not understand (*see id.* at 5–6).

The court asked the government to describe the evidence that the prosecution would present at trial. The Assistant United States Attorney ("AUSA") then representing the government (one of several who appeared on behalf of the government at various times in this prolonged matter) responded that the government would prove, based in part on Torrellas's November 2001 Confession Tape,

that in or about September 2001, the defendant took approximately five weapons from the lockers of club members of the Pawling Mountain Gun Club [and] that the defendant took the weapons for himself without permission from their owners....

(*Id.* at 11.) Defense counsel endorsed the government's characterization of the Confession Tape (*see id.* at 12) and played supporting excerpts of that tape for the court, including the following:

"Q We also have approximately five guns that you told me were taken from the Pauling [*sic*] Mountain Club, is that correct?

"A That's right.

"Q And you want to tell me about these guns, please? Describe them to me, what they were, where you got them and what you did with them.

"A All of them I kept, which you guys have now recovered. Um, yeah, there was from PMC—

"Q When you say PMC, you mean the Pauling [*sic*] Mountain Club, correct?

"A Yes....

. . . .

"Q Okay. Now all these guns ... we're talking about were taken on the same day, is that correct, approximately a month ago you told me?

"A Yes.

"Q We have a Smith & Wesson 9 millimeter that you told me about, a .45 caliber Colt Officers Lightweight handgun?

"A Yes.

"Q They were taken from whose locker?

"A Matt Goulet.

"Q Matt Goulet?

"A Yes.

"Q Were these lockers locked, do you remember, or were they open?

"A I was cleaning out Matt's locker, so I'm going to guess it was unlocked.

"Q Why were you cleaning the locker out?

"A That's part of my job."

(*Id.* at 13, 14–15 (quoting Confession Tape).) The district court asked Torrellas whether that was "you talking there on the tape," and Torrellas responded, "Yeah." (*Id.* at 15.)

The court concluded that, based on the defense stipulations and the admission by Torrellas that he was the person giving those taped responses to questioning by a member of the Sheriff's Office, Torrellas's plea of guilty was "supported by an independent factual basis for each and every element of the crime charged." (*Id.* at 18–19.) The court also concluded, "based on the allocution," as well as the most recent "report of the examination that was performed on him by the Bureau of Prisons medical staff," that Torrellas was "fully competent and capable of entering an informed plea, and that the plea [wa]s knowing and voluntary." (*Id.* at 19.) The court therefore accepted Torrellas's plea of guilty.

### C. Sentencing

The presentence report ("PSR") prepared on Torrellas stated that the Guidelines-recommended range of imprisonment for his offense was 77–96 months. By the date of his sentencing hearing, February 15, 2005, Torrellas had already served 40 months of his 72–month state sentence. Recognizing the overlapping conduct underlying Torrellas's federal and state offenses, the district court imposed a term of 96 months' imprisonment but reduced that term, by the 40 months Torrellas had served on the state sentence, to 56 months' imprisonment, to be served concurrently

with the remainder of the state sentence. (*See* Sentencing Transcript, February 15, 2005 ("S.Tr."), at 30–31.) The court stated that the imposition of the 56–month federal sentence concurrently with the state sentence "means that for 32 months of the 56 months period the defendant will be serving two sentences, which means he will serve an additional 24 months over and above the ... remaining State term of imprisonment." (*Id.* at 31.) The district court thereafter briefly considered structuring the sentence as one for a 24–month term of imprisonment to be served consecutively to the state sentence (*see id.* at 42); but, after hearing argument from the parties, the court adhered to its original formulation, *i.e.*, 56 months' imprisonment, 32 months of which were to be served concurrently with the remainder of the state sentence (*see id.* at 47–48). Judgment was entered accordingly.

## II. DISCUSSION

On appeal, Torrellas contends principally that his conviction should be vacated on the ground that the district court failed, before accepting his plea of guilty, to comply with the requirements of Fed. R.Crim.P. 11(b) that the court inform him of, and conduct an adequate inquiry into whether he understood, the nature of the charge against him. (*See* Torrellas brief on appeal at 16 & n. 16.) Torrellas also contends that the court impermissibly sentenced him to two conflicting terms of imprisonment. (*See id.* at 19.) We summarily reject Torrellas's sentencing contention because it is unsupported by the record, given the proceedings described in Part I.C. above. Only the plea proceedings warrant extended discussion.

To the extent pertinent to this appeal, Rule 11(b) provides that,

[b]efore the court accepts a plea of guilty[,] ... the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

. . . .

**(G)** the nature of each charge to which the defendant is pleading[.]

Fed.R.Crim.P. 11(b)(1)(G). This requirement, which prior to 2002 was found in Rule 11(c)(1), *see* Fed.R.Crim.P. 11 Advisory Committee Note (1983), along with the requirements that the court advise the defendant on such matters as "the range of penalties for the crime, the right to counsel, and the rights the defendant will forgo by pleading guilty, is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary," *United States v. Maher,* 108 F.3d 1513, 1520 (2d Cir.1997) (*"Maher"*) (discussing former Rule 11(c)(1) (citing *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969))), for "[w]ithout adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, [a] plea cannot be voluntary," *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

Nonetheless, "while Rule 11 imposes strict requirements on what information the district courts must convey and determine before they accept a plea, it does not ... tell them precisely *how* to perform this important task in the great variety of cases that ... come before them." *Maher,* 108 F.3d at 1520–21 (emphasis in original) (internal quotation marks omitted). "What is essential ... is that the court determine by some means that the defendant actually understands the nature of the charges." *Id.* at 1521. And "[i]n all such inquiries, matters of reality, and not mere ritual, should be controlling."

*McCarthy*, 394 U.S. at 467 n. 20, 89 S.Ct. 1166 (internal quotation marks and alteration omitted).

Rule 11 also provides that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed.R.Crim.P. 11(h). Thus, even " 'where the judge's [advice as to the nature of the offense] was not absolutely complete, in that some essential element of the crime was not mentioned,' " the error may be found harmless where " 'the defendant's responses clearly indicate his awareness of that element.' " *Maher*, 108 F.3d at 1521 (quoting Fed.R.Crim.P. 11 Advisory Committee Note (1983) (Rule 11(h))).

] Further, where a defendant raises on appeal a claim of Rule 11 error that he did not raise in the district court, that claim is reviewable only for plain error. *See, e.g., United States v. Vonn*, 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) (a previously "silent defendant" making a Rule 11 challenge "has the burden to satisfy the plain-error rule"). To satisfy the plain-error standard, the defendant must demonstrate, *inter alia*, "that (1) there was error, (2) the error was 'plain,' [and] (3) the error prejudicially affected his 'substantial rights.' " *United States v. Flaharty*, 295 F.3d 182, 195 (2d Cir.) (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)), *cert. denied*, 537 U.S. 936 (2002). "And because relief on plain-error review is in the discretion of the reviewing court, a defendant has the further burden to persuade the court that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' " *Vonn*, 535 U.S. at 63, 122 S.Ct. 1043 (quoting *Olano*, 507 U.S. at 736, 113 S.Ct. 1770 (other internal quotation marks omitted)). In assessing the likely effect of a Rule 11 error, we are to examine the entire record.

*See, e.g., Vonn*, 535 U.S. at 59, 122 S.Ct. 1043; *Maher*, 108 F.3d at 1521; *United States v. Parkins*, 25 F.3d 114, 118 (2d Cir.), *cert. denied*, 513 U.S. 1008, 115 S.Ct. 530, 130 L.Ed.2d 433 (1994).

██] In order to demonstrate that a Rule 11 error affected his substantial rights, a defendant must show "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). In determining whether the defendant has made such a showing, we consider, *inter alia*, "any record evidence tending to show that a misunderstanding was inconsequential to a defendant's decision" to plead guilty, as well as the "overall strength of the Government's case." *Id.* at 84–85, 124 S.Ct. 2333.

██] In his brief on appeal, Torrellas argues principally that the district court failed to comply with Rule 11(b) because it elicited only monosyllabic "Yes" or "No" responses from Torrellas. This assertion of Rule 11 error, which Torrellas did not advance in the district court, is meritless. "[T]here is no requirement that in order to rely on a defendant's answer in a guilty-plea colloquy to conclude that the defendant pleaded guilty knowingly and voluntarily, those answers must be lengthy and all-encompassing; a straightforward and simple 'Yes, your Honor' is sufficient to bind a defendant to its consequences." *United States v. Gardner*, 417 F.3d 541, 544 (6th Cir.2005) (other internal quotation marks omitted); *see, e.g., United States v. Rodriguez–Leon*, 402 F.3d 17, 25 n. 8 (1st Cir.2005) (rejecting the contention that a defendant's "one-word answers" during the plea colloquy indicated that the defendant did not understand the nature of the charges, where the district judge was "satisfied that the 'yes' or 'no' answers were not automatic, but rather based on an un-

derstanding of the substance of the questions," and refusing to "second-guess the district judge's acceptance of [the defendant's] one-word responses"); *see also United States v. Smith*, 160 F.3d 117, 121 (2d Cir.1998) ("a district court need not elicit detailed narrative responses from [a] defendant[ ] to satisfy" itself that the plea has a factual basis (internal quotation marks omitted)).

Here, we see no basis in the record for concluding that Torrellas lacked the requisite understanding. The district court asked Torrellas to let the court know if anything was unclear to him (*see* Plea Tr. 5); Torrellas never indicated that he had any such difficulty. He responded coherently to every question. Nor were all of his responses simple "Yes" or "No" answers. For example, when asked whether he had taken headache pills on the day before the plea hearing, Torrellas answered in the affirmative and added that he took them "[e]very day." (*Id.* at 17.)

Further, Torrellas's plea had been preceded by a number of medical and psychiatric examinations, over the course of nearly a year, to evaluate his competency; and the court had observed Torrellas at three competency status hearings during that period. The court was eventually informed that Torrellas's health had improved to the point where he was competent to stand trial and to assist in his defense, both in the opinions of the experts and in the opinion of his attorney. (*See, e.g.*, Jan. 2004 Competency Tr. 2–3.) Indeed, the penultimate expert evaluation of Torrellas (which was followed only by a defense expert's assessment immediately preceding Torrellas's decision to plead guilty) had concluded that Torrellas was "malingering and essentially faking the extent of his injuries" (S.Tr. 13; *see also* Feb. 2004 Competency Tr. 3). Given the record of the plea hearing, the court's own

observations of Torrellas, and the expert opinion that Torrellas was faking and malingering according to the report to which the district court expressly referred (*see* Plea Tr. 19), we see no error, much less "plain error," in the district court's conclusion that Torrellas both had the capacity to understand the court's explanations and did understand them.

■ We have slightly more concern with respect to one of the district court's descriptions to Torrellas of the charge against him. In the present case, the one-count indictment charged Torrellas with violating § 922(j), which makes it unlawful for "any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition ... which has been shipped or transported in[ ] interstate or foreign commerce, ... knowing or having reasonable cause to believe that the firearm or ammunition was stolen." 18 U.S.C. § 922(j). The indictment alleged that Torrellas had "unlawfully, knowingly and willfully received, possessed, concealed, stored, bartered, sold and disposed of stolen firearms and stolen ammunition, ... knowing and having reasonable cause to believe that the firearms and ammunition were stolen," having "stole[n]" them "while working as an employee at the Pawling Mountain Club in Pawling, New York, ... from the lockers of club members and retained such firearms and ammunition for his own use." The judgment states that Torrellas has been convicted of "Possession of Stolen Firearms." At the plea hearing, however, the nature of Torrellas's offense was described somewhat loosely.

For example, near the beginning of the plea hearing, the court stated:

> Now, Mr. Torrellas, the crime that you are charged with is unlawfully, knowingly and willfully *receiving* firearms shipped in interstate commerce, know-

ing and having reasonable cause to believe that the firearms ... were stolen. (Plea Tr. 5 (emphasis added).) Moments later, the court stated that "the accusation is that Mr. Torrellas unlawfully *possessed*" firearms "which were registered to other people." (*Id.* at 7 (emphasis added).) After advising Torrellas of the rights he would be giving up by pleading guilty, the court asked the government to describe the nature of its proof, and the AUSA responded that the government would show that Torrellas "*took* approximately five weapons from the lockers of club members" and "*took* the weapons for himself without permission from their owners" (*id.* at 11 (emphases added)).

We characterize these descriptions as loose in light of the fact that the acts denoted—receiving, possessing, and taking—are sometimes logically and/or doctrinally in tension with one another. For example, a person could not properly be convicted of simultaneously stealing an item and receiving the same item as stolen property. *See, e.g., Milanovich v. United States,* 365 U.S. 551, 558, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961) (Frankfurter, J., dissenting) ("a man who takes property does not at the same time give himself the property he has taken"); *see also Ball v. United States,* 470 U.S. 856, 862, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985) ("[W]hen received, a firearm is necessarily possessed," and in the absence of an indication of contrary congressional intent, a defendant could not properly be punished for both receiving the firearm in violation of 18 U.S.C. § 922(h)(1) and possessing it in violation of 18 U.S.C.App. § 1202(a)(1) (internal quotation marks omitted)); *United States v. Washington,* 861 F.2d 350, 352 (2d Cir.1988) ("as a matter of statutory construction a defendant may not be convicted for both theft and possession of the goods obtained in the theft").

Nonetheless, while the terminology used at the plea hearing left something to be desired as to precision, the record as a whole leaves no doubt whatever that Torrellas was aware of the nature of the charge against him as possession of stolen firearms and that his plea established that possession. First, at a preliminary hearing attended by Torrellas on the day of his arraignment, the AUSA described the charge against Torrellas as "possession" in violation of § 922(j). (Hearing Transcript, May 29, 2002, at 3.) Similarly, the letter sent by Torrellas's attorney to the court, stating that Torrellas wished to change his plea to one of guilty, stated that "[t]he instant indictment charges Mr. Torrellas with *possession* of firearms and ammunition which he stole from the lockers of club members at the Pawling Mountain Club, in violation of 18 U.S.C. § 922(j)." (Torrellas Letter at 1–2 (emphasis added).) And the district court itself at the plea hearing stated, in one of its iterations, that the charge was that Torrellas unlawfully "possessed" firearms owned by others. (Plea Tr. 7.)

Further, at the commencement of Torrellas's sentencing hearing, the court stated that Torrellas had "been found guilty by plea to a [*sic*] one count of *possession* of stolen firearms." (S.Tr. 2 (emphasis added).) Torrellas did not demur to that description. The court then inquired whether defense counsel had reviewed with Torrellas the PSR, the first page of which described his offense as "Possession of Stolen Firearms." Counsel responded, "I have indeed, Your Honor." (*Id.* at 3.) Counsel also stated that except for one aspect of the PSR not relevant here, Torrellas had "no objection to any portion of it." (*Id.* at 4.) And finally, in discussing various Guidelines questions at that hearing, the AUSA noted that an offense level increase was recommended for Torrellas

because "one of the firearms that he possessed that was stolen is the same firearm that he used in [a] robbery . . . that he was convicted for" (*id.* at 17); and defense counsel referred to the "guideline for the firearm possession" (*id.* at 21).

Torrellas's statements as recorded on the Confession Tape, which were the foundation for the court's finding that his plea had a factual basis, plainly revealed that Torrellas had possessed stolen firearms. The government characterized Torrellas as admitting that he "took" for himself weapons that belonged to others (Plea Tr. 11), and defense counsel "agree[d] with the characterization that the government . . . made of the tape" (*id.* at 12). Defense counsel then cued the tape to the place at which Torrellas responded to questions as to " 'where [he] got the [guns] and what [he] did with them' " (*id.* at 13 (quoting Confession Tape)). Torrellas's response to those questions was, " 'All of them I kept . . . .' " (*Id.* (quoting Confession Tape).)

A person who takes property has, at the very least at the instant of the taking, possession of that property. And Torrellas confessed that he had "kept" the stolen weapons. (*See also* Torrellas brief on appeal at 8 ("On the tape, Defendant stated the firearms were taken the same day about a month before questioning. Asked where he got the guns and what he did with them, Defendant responded they were taken from the Pawling Mountain Club and that he kept them.").)

In sum, we see no evidence in the record that Torrellas failed to understand that he was being charged with possession of stolen weapons. It is clear, in light of the Confession Tape, that the government's evidence in support of the charge of possession was overwhelming. And we see no probability that, but for the less-than-pre-

cise terminology used at various points in the plea proceeding, Torrellas would not have pleaded guilty. We conclude that the record thus refutes any suggestion that either Torrellas's substantial rights or the integrity or public reputation of judicial proceedings have been adversely affected by any loose terminology during his plea proceedings with respect to the charge that he possessed stolen firearms.

## CONCLUSION

We have considered all of Torrellas's arguments on this appeal and have found in them no basis for relief.

We note, however, that the judgment of conviction misspells Torrellas's surname. Accordingly, we affirm, but we remand for the district court to make the necessary clerical correction of the judgment.