21-1711(L)
*U.S. v. Aybar-Peguero*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2022

ARGUED: NOVEMBER 1, 2022
DECIDED: JULY 6, 2023

No. 21-1711(L), 21-1847(Con)

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

FRANCIS JOSE AYBAR-PEGUERO, AKA GRENA,
*Defendant-Appellant.*

————

Appeal from the United States District Court
for the District of Connecticut.

————

Before: WALKER, LEE, and NATHAN, *Circuit Judges.*

————

1

Defendant-Appellant Francis Jose Aybar-Peguero pled guilty to drug trafficking in violation of 21 U.S.C. §§ 841 and 846 and concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). During his plea colloquy, speaking through a Spanish-English interpreter, Aybar-Peguero repeatedly failed to acknowledge that he had intended to conceal the proceeds of his drug trafficking, an element of concealment money laundering. On appeal, Aybar-Peguero contends that his conviction for concealment money laundering should be reversed because an insufficient factual basis existed for his guilty plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure. We agree.

For the reasons that follow, we VACATE Aybar-Peguero's § 1956(a)(1)(B)(i) conviction and sentence, and REMAND for proceedings consistent with this opinion.

––––––––

ELIZABETH A. LATIF, West Hartford, CT, *for Defendant-Appellant Francis Jose Aybar-Peguero*.

JOCELYN C. KAOUTZANIS (Marc H. Silverman, *on the brief*), Assistant United States Attorneys, *for* Leonard C. Boyle, United States Attorney for the District of Connecticut, New Haven, CT, *for Appellee the United States of America*.

––––––––

JOHN M. WALKER, JR., *Circuit Judge*:

Defendant-Appellant Francis Jose Aybar-Peguero pled guilty to drug trafficking in violation of 21 U.S.C. §§ 841 and 846 and concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). During his plea colloquy, speaking through a Spanish-English interpreter, Aybar-Peguero repeatedly failed to acknowledge that he had intended to conceal the proceeds of his drug trafficking, an element of concealment money laundering. On appeal, Aybar-Peguero contends that his conviction for concealment money laundering should be reversed because an insufficient factual basis existed for his guilty plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure. We agree.

For the reasons that follow, we VACATE Aybar-Peguero's § 1956(a)(1)(B)(i) conviction and sentence, and REMAND for proceedings consistent with this opinion.

## BACKGROUND

Between May 2019 and October 2019, Aybar-Peguero conspired with members of a drug trafficking organization to sell narcotics out of his convenience store, the Corner Mini Market in Waterbury, Connecticut. Following an extensive investigation, law enforcement agents arrested Aybar-Peguero and searched his store. They found large quantities of heroin and fentanyl, other evidence of drug trafficking such as digital scales and a concealed compartment, and, in the store's cash register, drugs packaged for distribution. Although the agents noted the absence of a point-of-sale system and

3

cash register receipts as well as outdated and dusty merchandise—indicia that the store was a front for drug trafficking—they concluded that the store also did legitimate business as its shelves were stocked and it had heavy foot traffic. The parties later stipulated that Aybar-Peguero was responsible for trafficking approximately one kilogram of heroin and 400 grams of fentanyl.

During the relevant period, Aybar-Peguero maintained three bank accounts, a business checking account, a personal checking account, and a personal savings account. Law enforcement financial analysts concluded that Aybar-Peguero concealed the proceeds of his drug trafficking by depositing them into these accounts along with his store's legitimate earnings.

Aybar-Peguero agreed to plead guilty to one count of conspiracy to distribute and to possess with intent to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 841 and 846 and one count of concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).[1] In his petition to change his plea from not guilty to guilty, Aybar-Peguero stated that he "knowingly conducted [and] was involved in a financial issue, and knew that [it] was from illegal acts." App'x 59.

---

[1] The parties agree that the plea agreement's appeal waiver does not bar an appeal that, as here, "challenges . . . the process leading to the plea." *United States v. Lloyd*, 901 F.3d 111, 118 (2d Cir. 2018).

4

On September 30, 2020, Aybar-Peguero appeared before Magistrate Judge Donna F. Martinez (the matter having been referred to her by District Judge Vanessa L. Bryant) to plead guilty to the two agreed-upon counts. At the plea proceeding, Aybar-Peguero, through a Spanish-English interpreter, first allocuted to drug trafficking, which is not at issue in this appeal. With respect to the concealment money laundering count, the prosecutor outlined the elements of that crime, including that the defendant conducted a financial transaction "with the intent to conceal the proceeds of the specified unlawful activity." App'x 114. Aybar-Peguero began his allocution by stating that he "was involved in this financial transaction through illegal acts, and I know that I did this and that it's illegal." App'x 116. The magistrate judge then engaged Aybar-Peguero in a further colloquy:

> THE COURT: I'm trying to understand what the conduct was underneath the money laundering count. Did you . . . get money from the drug dealing?
>
> THE DEFENDANT: Yes, I did receive money.
>
> THE COURT: And what did you do with it?
>
> THE DEFENDANT: I put it in the bank.
>
> THE COURT: And why did you do that? Why did you put it in the bank?
>
> THE DEFENDANT: I don't know. It was a way to save my money.

5

THE COURT:  Did you want to hide that it was from the drug dealing?

THE DEFENDANT:  It wasn't so much hiding it from drugs.  I was also working.  I wanted to put it with the money that I was making.

THE COURT:  So you put it with money from legitimate sources.  Is that what you're saying?

THE DEFENDANT:  What do you refer to with legitimate accounts?

THE COURT:  Okay.  So I don't know what the Defendant is trying to tell me, Mr. DiLibero.  Why don't you take a moment with him so that he can tell me a little bit more about the money laundering, the concealment.

App'x 117.  After the break, the hearing continued:

THE COURT:  All right.  What do you want to tell me, Mr. Aybar?

THE DEFENDANT:  I was putting money from my work and I was joining it with money from the drugs.

App'x 118.

The magistrate judge moved on, asking the government to summarize its evidence.  With respect to money laundering, the prosecutor stated that Aybar-Peguero had deposited cash linked to

6

drug trafficking in both his business and personal accounts "to conceal his illegally owned profits in that he was using the mini market as a front."  App'x 120.  The government also pointed to the store's lack of a point-of-sale system and the absence of cash register receipts as suggesting that "there appeared to be no legitimate business."  App'x 120.  When asked whether he agreed with the government's position, Aybar-Peguero answered:

> THE DEFENDANT:  I'm not too much in agreement because not all of that money came from drugs.  There was some of it that came from my work.  So both of them were there.

App'x 121.  The government then acknowledged that the store did some legitimate business.

Without any additional discussion or mention of the defendant's intent in commingling drug and legitimate business proceeds, the magistrate judge recommended that the district court accept Aybar-Peguero's guilty plea.  The district court later adopted the magistrate judge's Findings and Recommendations, accepted the plea, and found Aybar-Peguero guilty of conspiracy to distribute and possession with intent to distribute controlled substances as well as concealment money laundering.  The district court sentenced Aybar-Peguero to concurrent prison terms of 87 months for the two counts of conviction as well as a period of supervised release, a fine, and a special assessment.

7

Rule 11 of the Federal Rules of Criminal Procedure sets forth the procedures by which guilty pleas may be entered and accepted. As we "have long emphasized, a guilty plea is no mere formality, but a grave and solemn act." *United States v. Lloyd*, 901 F.3d 111, 118 (2d Cir. 2018) (internal quotation and alteration marks omitted). Because "[c]lose and regular adherence to the Rule's demands bears heavily on the legitimacy of the plea-bargaining system as a whole," *id.* at 119, we "examine critically even slight procedural deficiencies to ensure that the defendant's guilty plea was a voluntary and intelligent choice, and that none of the defendant's substantial rights ha[s] been compromised," *United States v. Livorsi*, 180 F.3d 76, 78 (2d Cir. 1999) (internal quotation marks omitted).

At issue here is Rule 11(b)(3), which requires the district court to "determine that there is a factual basis for the plea" "[b]efore entering judgment on a guilty plea." This is not a difficult standard to meet—the court need not scrutinize the evidence or personally conclude that the defendant is guilty—but it is an essential one. *See United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997). Specifically, the court must "assure itself . . . that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *Id.* The Rule also requires the district court to assess whether, based on the "facts at its disposal" including but not limited to "the defendant's own admissions," the offense conduct satisfies the elements of the statute under which the defendant seeks to plead guilty. *Irizarry v. United States*, 508 F.2d 960,

967 (2d Cir. 1974). As part of this process, it is critical that the defendant's colloquy with the district court include an admission that covers the elements of the offense charged. *See Brady v. United States*, 397 U.S. 742, 748 (1970) ("Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment.").

Where, as here, "a defendant raises on appeal a claim of Rule 11 error that he did not raise in the district court, that claim is reviewable only for plain error." *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006). To satisfy this "heavy burden," an appellant "must demonstrate that (1) there was error, (2) the error was plain, and (3) the error prejudicially affected his substantial rights; if such error is demonstrated, we will reverse . . . only when (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Lloyd*, 901 F.3d at 119–20 (internal quotation marks omitted). To demonstrate prejudice under the third prong, "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

Aybar-Peguero's sole argument on appeal is that the district court erred by accepting his guilty plea for concealment money laundering without a factual basis for the plea. Specifically, he contends that there was no basis for the court to conclude that he had

9

the *mens rea* required by the statutory provision under which he was convicted.  That provision, § 1956(a)(1)(B)(i), provides that:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . *knowing that the transaction is designed in whole or in part . . . to conceal or disguise* the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be [guilty].

18 U.S.C. § 1956(a)(1)(B)(i) (emphasis added).  The parties agree that this "concealment element of [the] statute requires that the purpose, not merely the effect, of the endeavor must be to conceal or disguise" the proceeds of illicit activity.  Government's Br. 24 (quoting *United States v. Garcia*, 587 F.3d 509, 512 (2d Cir. 2009).

According to Aybar-Peguero, "the record does not provide a sufficient factual basis to conclude that [he] knew the relevant transactions were intended to conceal the nature, source, or ownership of the laundered funds."  Appellant's Br. 10.  The government disagrees, arguing that the defendant's statements at the plea hearing as well as the subsequently completed presentence report (PSR) provided the district court with an adequate basis for accepting the plea.

After a careful examination of the entire record, we agree with Aybar-Peguero that the evidence in the record at the time of the plea

hearing did not satisfy the *mens rea* requirement for concealment money laundering. Aybar-Peguero never acknowledged a concealment purpose, and there was not sufficient evidence elsewhere in the record to warrant accepting the plea. Thus, the district court lacked a sufficient basis to accept his guilty plea.

In both his pre-plea petition and his initial oral statement to the magistrate judge, Aybar-Peguero stated only in the most general terms that he had engaged in illegal financial transactions; he did not speak to his intent in doing so. In the former, he wrote: "I was involved in a financial issue, and I knew that [it] was from illegal acts. I did this and it is illegal." App'x 59. Similarly, at the hearing, when the magistrate judge asked him to describe his conduct, he said: "I was involved in this financial transaction through illegal acts, and I know that I did this and that it's illegal." App'x 116. But a defendant's characterizing his conduct as "illegal" does not make it so. A defendant may characterize his conduct as illegal yet be unaware of the elements of the offense. As the advisory committee's note to the 1966 amendments to Rule 11 explains, the Rule's factual basis requirement "protect[s] a defendant who is" pleading guilty but does not "realiz[e] that his conduct does not actually fall within the charge."

Aybar-Peguero's subsequent colloquy with the magistrate judge undermines the government's claim that he admitted to the necessary *mens rea*. In response to the court's questioning, Aybar-Peguero stated that his purpose in depositing the drug trafficking proceeds in the bank was "to save my money." App'x 117. When the

11

court specifically queried whether his motivation had been "to hide that [the money] was from the drug dealing," he replied in substance that it was not. *Id.* He said: "It wasn't so much hiding it from drugs. I was working. I wanted to put it with the money that I was making." *Id.*

The government argues that Aybar-Peguero's opening phrase, "[i]t wasn't so much hiding it," means that he had both the motive to hide the funds and the motive to save the funds. We disagree. Read in the context of the entire hearing, it is clear that Aybar-Peguero never agreed that he engaged in the transactions with the purpose of concealment. That the first six words of his response, which were filtered through an interpreter, were not an outright denial is not significant. In our view, the clear import of his response was that his true intent was to save his money by putting it into a bank as he did with his legitimate income.

Apart from the colloquy, the government argues that the record at the plea hearing contained a sufficient factual basis because the intent element was included in the information and plea agreement. While it is true that "[w]e have accepted a reading of the indictment to the defendant coupled with [an] admission of the acts described in it as a sufficient factual basis for a guilty plea," we require more "if the defendant denies an element of the offense or generally maintains his innocence." *Godwin v. United States*, 687 F.2d 585, 590 (2d Cir. 1982). Here, Aybar-Peguero's non-acknowledgement of intent to conceal made it incumbent on the court to ensure that the record of the plea proceeding contained evidence that the motive, and not just

12

the effect, of Aybar-Peguero's conduct was concealment. The magistrate judge did not do so. Moreover, "a reading of the indictment . . . coupled with . . . admission of the acts" is only sufficient if "the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal." *Id.* In *Garcia*, we held that this "principle is inapplicable" to the concealment element of money laundering and rejected "[a]ny argument that the charge is uncomplicated and readily understandable by the average layman." 587 F.3d at 518. Thus, "[Aybar-Peguero's] supposed understanding of the nature of the charge does not take the government far." *Id.*

The government's assertion that Aybar-Peguero's intermingling of illicit and legitimate funds "reinforces the concealment *purpose* underlying the deposits" is likewise unconvincing. Government's Br. 31 (emphasis added). Aybar-Peguero had not acknowledged any concealment purpose that this intermingling could reinforce. It is not enough that the financial transactions had the effect of concealing them; the defendant must have had the purpose of doing so. Here, the defendant's purpose in doing so was not established by the colloquy in court and no other evidence supported it.

The government argues in the alternative that the presentence report, which was developed after the hearing but before the district judge accepted the guilty plea, provided an adequate factual basis for the concealment money laundering charge under Rule 11.

At the outset, we do not think that facts adduced *after* a plea hearing may properly be considered by a district judge in accepting a

plea. *See Garcia*, 587 F.3d at 514, 519–20. Here, the PSR was not docketed until March 2021, many months after the plea hearing. In *Irizarry*, we expressly disallowed consideration of such "[p]ost hoc" evidence—that is, "material [that] was not made a part of the record of the proceedings at which the plea was entered"—because "to bifurcate the inquiry in this manner would be counterproductive and could lead to confusion." 508 F.2d at 967–68 & n.7. As we have reiterated on several occasions, the facts on which the district court relies "must . . . be . . . on the record at the time of the giving of the plea." *United States v. Adams*, 448 F.3d 492, 499 (2d Cir. 2006) (emphasis omitted); *accord Garcia*, 587 F.3d at 514, 519–20; *Maher*, 108 F.3d at 1524–25; *Irizarry*, 508 F.2d at 967–68; *see also McCarthy v. United States*, 394 U.S. 459, 465 (1969) ("Rule [11] is intended to produce a complete record *at the time the plea is entered*." (emphasis added)). It is true that in *Lloyd*, the panel permitted consideration of the post-plea-hearing PSR without addressing our precedents to the contrary. *See* 901 F.3d at 123–24 & n.9. Thus, as we noted the following year in *United States v. Murphy*, *Lloyd* is in tension with our prior precedents. 942 F.3d 73, 87 n.8 (2d Cir. 2019).

To be sure, Rule 11(b)(3) states simply, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." But this general statement does not speak to precisely how and when, before entering judgment on the plea, the factual basis should be determined. Those questions have been resolved, however, by the above precedents, which hold that the factual basis for the plea must be placed on the record at the plea hearing. Only in this way can the judge be assured that the defendant

14

is aware not only of the elements of the crime with which he is charged, but also that the specific conduct committed satisfies those elements. In *Lloyd*, where the panel permitted consideration of the post-plea-hearing PSR, it relied solely on the language of the rule without regard to prior precedent and thus the analysis was incomplete. Accordingly, we conclude that materials not in the record at the time of the plea hearing cannot properly be considered and *Irizarry* remains good law.

In any event, the record here bears no indication that the district court considered the PSR in determining whether there was a factual basis for the concealment money laundering plea. In its docket order accepting the plea, the district court noted that it had reviewed the plea agreement, magistrate judge's recommendation, and several other documents, but it made no mention of the PSR. Rule 11 requires the district court to "develop, *on the record*, the factual basis for the plea." *Santobello v. New York*, 404 U.S. 257, 261 (1971) (emphasis added). Thus, in assessing whether the district court complied with Rule 11's strictures, we may not consider whether any facts that the court *did not* rely on could have furnished the necessary basis.[2]

The district court's error in accepting the plea to concealment money laundering does not end our inquiry. To secure vacatur of his

---

[2] In any case, we are doubtful that, even considering the PSR, an adequate factual basis existed to accept the plea. Aside from the conclusory statement that Aybar-Peguero made the transactions "to conceal the income source," PSR ¶ 30, the PSR is silent as to his *mens rea*.

conviction under plain error review, Aybar-Peguero must also show that the district court's error was "plain," "prejudicially affected his substantial rights," and "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Lloyd*, 901 F.3d at 119. We are convinced that Aybar-Peguero meets this standard.

First, the district court's error is "plain." To be "plain," an error must be "clear" or "obvious," *United States v. Olano*, 507 U.S. 725, 734 (1993), or "contrary to law that was clearly established," *United States v. Donziger*, 38 F.4th 290, 303 (2d Cir. 2022) (internal quotation marks omitted). Rule 11(b)(3) unmistakably requires a district court to ascertain whether a factual basis for a plea exists before accepting a guilty plea. "Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment." *Brady*, 397 U.S. at 748. In this case, Aybar-Peguero did not admit to a concealment purpose—an offense element—and the other evidence did not establish that intent either. Thus, it is clear and obvious that Rule 11(b)(3) was not satisfied.

Second, the district court's error prejudicially affected Aybar-Peguero's substantial rights. "In the context of a Rule 11 error," the prejudice standard "requires 'a reasonable probability that, but for the error, the defendant would not have entered the plea.'" *Garcia*, 587 F.3d at 520 (alteration marks omitted) (quoting *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005)). In making this assessment, we, unlike the district court, are not limited to the record evidence at the time of the plea. *See Torrellas*, 455 F.3d at 103 ("In

16

determining whether the defendant has" shown prejudice, "we consider . . . any record evidence . . . as well as the overall strength of the Government's case." (internal quotation marks omitted)). It appears likely that Aybar-Peguero would not have pled guilty to violating § 1956(a)(1)(B)(i) had he understood its *mens rea* requirement and been told that he needed to state a concealment purpose. Aybar-Peguero was consistent and persistent in maintaining that his purpose was otherwise.

Last, the plain and prejudicial error seriously harmed the legitimacy of the judicial proceeding. As we observed in *Lloyd*, a lack of close adherence to Rule 11's requirements, as occurred here, "bears heavily on the legitimacy of . . . plea-bargaining." 901 F.3d at 119. The district court's acceptance of the guilty plea without Aybar-Peguero's acknowledgement that he intended to conceal the source of his funds casts serious doubt upon the "fairness, integrity [and] public reputation of [the] judicial proceedings." *Id.* (internal quotation marks omitted).

In sum, we hold that it was plain error for the district court to accept Aybar-Peguero's guilty plea to concealment money laundering without a sufficient factual basis in the record at the time of the plea hearing.

## CONCLUSION

For the foregoing reasons, we VACATE Aybar-Peguero's conviction under § 1956(a)(1)(B)(i) and the sentences for both counts

of conviction.[3]  The case is REMANDED to the district court for proceedings consistent with this opinion.

---

[3] The parties agree that vacating the § 1956(a)(1)(B)(i) conviction necessitates vacating the concurrent sentences imposed for both convictions. *See United States v. Sperling*, 506 F.2d 1323, 1343 (2d Cir. 1974).