16-3169-cr
*United States v. Lloyd*

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term, 2017

(Argued: April 17, 2018    Decided: August 20, 2018)

Docket No. 16-3169-cr

UNITED STATES OF AMERICA,

*Appellee,*

–v.–

PATRICK LLOYD,

*Defendant-Appellant,*

JON GARCIA, CODI BURKE, BERNIE RUSSO, KIMBERLY JANDREW, JUSTIN BRAILSFORD, TRAVIS MOORE, ZACHARY HUTO, LESLIE MOORE, PAUL WILLIAMS, CATHERINE BERRY, GINELLE GARDNER, MICHAEL SPENCER, JESSICA MONAGHAN,

*Defendants.*[*]

B e f o r e :

WESLEY, CHIN, CARNEY, *Circuit Judges.*

---

[*] The Clerk of Court is directed to amend the caption to conform to the above.

Patrick Lloyd appeals from a judgment entered following his guilty plea in the United States District Court for the Northern District of New York (Sharpe, *J.*). Lloyd pleaded guilty to conspiracy to possess with intent to distribute controlled substances and to possession of a firearm in furtherance of a drug trafficking crime, the latter on a theory of liability based on *Pinkerton v. United States*, 328 U.S. 640 (1946). On appeal, he argues principally that the District Court's plea colloquy did not comport with Federal Rules of Criminal Procedure 11(b)(1)(G) and 11(b)(3), rendering his plea to the firearm charge involuntary and unknowing, and requiring vacatur of his conviction.

We decide that the District Court erred by failing to ensure while accepting Lloyd's plea that Lloyd understood "the nature of each charge," as required by Rule 11(b)(1)(G). Nevertheless, because the record does not establish that but for this Rule 11 violation Lloyd would not have pleaded guilty, Lloyd has not demonstrated that his substantial rights were violated, and his challenge fails. Lloyd's second Rule 11 argument also falls short. The record shows that the court adequately "determine[d] that there is a factual basis for the plea" before it entered judgment, as required by Rule 11(b)(3). We dismiss Lloyd's substantive arguments regarding *Pinkerton* liability as barred by the appeal waiver contained in his plea agreement. And, as to Lloyd's claim of ineffective assistance, we adhere to our ordinary practice of declining on direct appeal to consider this type of claim, leaving Lloyd to pursue it on petition for habeas corpus, as during those proceedings the relevant facts may be more fully developed.

JUDGMENT AFFIRMED AND APPEAL DISMISSED IN PART.

———————

STEVEN Y. YUROWITZ, Esq., New York, NY, *for Defendant-Appellant*.

STEVEN CLYMER, Assistant United States Attorney (Carina H. Schoenberger, Assistant United States Attorney, *on the brief*), *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

———————

SUSAN L. CARNEY, *Circuit Judge*:

In August 2015, defendant-appellant Patrick Lloyd pleaded guilty to two charges set forth in a third superseding indictment. These were: (1) conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846; and (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), based on the theory of co-conspirator liability articulated in *Pinkerton v. United States*, 328 U.S. 640 (1946). Following entry of Lloyd's guilty plea, the United States District Court for the Northern District of New York (Sharpe, *J.*), which accepted the plea, sentenced Lloyd principally to 25 years in prison, the mandatory minimum term of incarceration for these offenses.

On appeal, Lloyd raises several arguments for vacating his firearm conviction. Most significantly, he maintains that the District Court failed to satisfy two signal requirements of Federal Rule of Criminal Procedure 11: that a district court judge accepting a plea personally inform the defendant of (among other matters) the "nature of each charge" as to which the defendant is pleading guilty, Fed. R. Crim. P. 11(b)(1)(G); and that, before entering judgment on a guilty plea, the court determine "that there is a factual basis for the plea," Fed. R. Crim. P. 11(b)(3).

Lloyd further challenges his firearm possession conviction on grounds related to the *Pinkerton* theory of liability relied on by the government. Finally, he asserts that he received ineffective assistance of counsel in the proceedings leading up to his plea.

Because Lloyd's written plea agreement contains an appeal waiver, we begin by addressing the Rule 11 arguments, for if he is unable to sustain them, the waiver will bar his substantive arguments. Lloyd raised neither of his Rule 11 arguments in the District Court, so we review the District Court's actions for plain error.

3

We conclude that, when the District Court accepted Lloyd's plea, it erred by failing to "inform [him] of, and determine that [he] underst[ood] . . . the nature of each charge to which [he] [was] pleading." Fed. R. Crim. P. 11(b)(1)(G). During the change-of-plea hearing, the court did not articulate the elements of the crime to which Lloyd was pleading guilty, ask the government to do so, or have Lloyd state in his own words the factual conduct underlying his convictions such that the court could be certain and the record would reflect that Lloyd understood "the nature of each charge." This is a significant failure. We nevertheless reject Lloyd's challenge because he has pointed to nothing in the record suggesting that, had the District Court satisfied this element of Rule 11, he would not have pleaded guilty to the firearm charge. *See United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006). He therefore has not demonstrated that his substantial rights have been violated, and his argument fails.

Lloyd's second Rule 11 argument rests on subsection (b)(3) of the Rule, which mandates that district courts "determine that there is a factual basis for the plea" and that they do so not necessarily at the plea colloquy, but at latest "[b]*efore entering judgment* on a guilty plea." Fed. R. Crim. P. 11(b)(3) (emphasis added.) In his change-of-plea hearing before the District Court, Lloyd acknowledged the accuracy of the facts as set forth in his written plea agreement. Lloyd's presentence report also set out relevant facts, and the District Court adopted that report at sentencing. Together, these made clear to the District Court before it entered judgment that the plea was supported by a sufficient factual basis. We therefore also reject Lloyd's second Rule-11-based challenge to his guilty plea.

Having concluded that Lloyd's challenges to his guilty plea do not succeed, we dismiss the appeal as to Lloyd's two substantive arguments regarding his criminal liability for firearms possession under the theory endorsed in *Pinkerton*. Both are barred

4

by his appeal waiver. Finally, we adhere to our ordinary practice of declining on direct appeal to consider a claim of ineffective assistance of counsel, and leave Lloyd to pursue his claim through habeas corpus proceedings, where the relevant facts may be more fully developed.

We therefore AFFIRM the District Court's judgment of conviction, and DISMISS the appeal in remaining part.

## BACKGROUND

On April 23, 2014, a grand jury in the Northern District of New York returned a third superseding indictment ("Indictment") against defendant-appellant Patrick Lloyd and five codefendants.[1] The Indictment alleged that, from some time in 2012 through September 2013, Lloyd and his codefendants conspired to distribute controlled substances in St. Lawrence, Franklin, and Clinton Counties, New York.

The Indictment charged Lloyd with two crimes: (1) conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846 ("Count 1" or "the drug count"); and (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) ("Count 2" or "the firearm count"). The firearm count was premised on a *Pinkerton* theory of liability: the government sought to hold Lloyd criminally responsible for a codefendant's possession of the relevant firearms during the course of the drug conspiracy. *See generally Pinkerton v. United States*, 328 U.S. 640 (1946).

---

[1] When we heard argument in this case, Lloyd's appeal was consolidated with that of one codefendant, Michael Spencer. Shortly after argument, however, we severed the appeals. *See* Order, Case No. 16-3169, Doc. No. 108.

In August 2015, on the eve of trial, Lloyd reached an agreement with the government to plead guilty, and on August 6 of that year, the District Court conducted Lloyd's change-of-plea hearing. Because the primary issue on appeal relates to the way the court conducted that hearing, we describe it in some detail.

The District Court opened the hearing by confirming with defense counsel that Lloyd intended to change his earlier plea of not guilty "and enter a plea of guilty to Counts [1] and [2] of the [Indictment], charging him with conspiracy to possess with the intent to distribute and the distribution of controlled substances and the possession of a firearm in furtherance of a drug trafficking crime, all in violation of federal law, all pursuant to the terms of a plea agreement." Appellant's App. ("AA") 43. Proceeding under oath, Lloyd answered "yes" to the court's questions whether he had had a chance to read the written plea agreement and discuss it with counsel, and whether counsel "[w]as . . . able to explain those things . . . in a way so that [he felt he] underst[oo]d the terms and conditions of that plea agreement." *Id.* at 45. The court then informed Lloyd that it would "incorporate the plea agreement into the record of these proceedings since [Lloyd had] read it and [he] underst[oo]d it and [he had] discussed it with counsel." *Id.*

The court next addressed the constitutional rights that Lloyd would relinquish by pleading guilty. *See generally* Fed. R. Crim. P. 11(b)(1). The District Court listed aloud the following rights as being subject to Lloyd's waiver: the right to a jury trial; to refrain from incriminating himself; to maintain his earlier plea of not guilty; to testify at trial, if he wished; to compel the appearance of witnesses; and to be proved guilty, if at all, beyond a reasonable doubt. The court then advised Lloyd of the maximum and minimum terms of imprisonment and supervised release, as well as the maximum possible fine, for each count of conviction, and informed Lloyd that he faced a $100

6

special assessment on each count. The District Court confirmed with Lloyd that Lloyd was a United States citizen and told him that, as a consequence of his conviction, he would lose the right to vote and to carry firearms. Lloyd responded in the affirmative when asked if he understood these effects of a conviction.

Next, the District Court explained the terms of Lloyd's appeal and collateral attack waiver: Lloyd's waiver provided that he would give up his rights to "challenge the convictions resulting from [the] plea, . . . challenge any sentence of imprisonment of life or less, . . . challenge any fine within that permitted by law, [or] challenge any term of supervised release permitted by law." AA 52. Lloyd again declared that he understood, and the District Court confirmed with Lloyd that nobody had threatened Lloyd, pressured him to plead guilty, or promised him any benefit not identified in the plea agreement. *See generally* Fed. R. Crim. P. 11(b)(2).

The District Court then "turn[ed] to the last area": determining whether "there are facts that would demonstrate . . . that [Lloyd] committed the two crimes [he was] pleading guilty to." AA 55–56. On this point, the court and Lloyd engaged in the following exchange:

> THE COURT: . . . Now, here is what I always do: When a plea agreement is filed, I sit down and read the facts that are contained in it, so I get a copy of this in advance. Even though you didn't execute the final one until you appeared here in court, I have seen a copy, I read those facts and the facts in the plea agreement will support your plea if they're true. I know you signed the agreement saying they're true, but I like to make doubly certain: Are the facts contained in this plea agreement true?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Then you are admitting them to me?

7

THE DEFENDANT: Yes.

THE COURT: Then as to the two counts in the indictment, the drug count and the gun count, how do you plead, guilty or not guilty?

THE DEFENDANT: Guilty.

*Id.* at 56. The District Court accepted Lloyd's guilty plea, set a sentencing date, and adjourned court.

Thirteen months later, the court sentenced Lloyd principally to 20 years' imprisonment on Count 1 (the drug count), and 5 years' imprisonment on Count 2 (the firearm count), the statutory minimum on each count. Because the court was required to impose these terms of incarceration as consecutive sentences, Lloyd's 25-year sentence reflected the mandatory minimum term of his imprisonment. Judgment entered on September 8, 2016, and Lloyd, acting *pro se*, filed a notice of appeal dated the following day. He is counseled on appeal.

## DISCUSSION

Lloyd argues that we must vacate his conviction for possessing a firearm in furtherance of a drug trafficking crime.[2] He urges several grounds for vacatur: (1) that *Pinkerton* liability for firearm possession constitutes an impermissible, judicially created "common-law crime[ ]," Appellant's Br. 15; (2) that *Pinkerton* liability is an

---

[2] Lloyd's brief appears not to challenge his conviction on the drug count, and thus our discussion in this opinion focuses on the firearm count. Regardless, any Rule 11 or ineffective assistance claims tied to the drug count would fail for the same reasons—set forth in the remainder of this opinion—as they do with respect to the firearm count. (Because the government pursued a *Pinkerton* theory of liability for the firearm count only, no *Pinkerton* argument was available with respect to the drug count.)

element of a criminal offense and therefore the government's failure to charge it in the indictment renders his conviction on this count invalid; (3) that, for two distinct reasons, the District Court's plea colloquy did not comport with Federal Rule of Criminal Procedure 11, rendering his plea involuntary and not knowing; and (4) that, in the District Court proceedings, he received ineffective assistance of counsel. For its part, the government urges us to conclude primarily that the appeal waiver contained in Lloyd's plea agreement is enforceable and bars Lloyd's *Pinkerton* and Rule 11 arguments; furthermore, it contends, all of Lloyd's challenges fail on the merits.[3]

An appeal waiver included in a plea agreement does not bar challenges to the process leading to the plea. Challenges that typically survive appeal waivers include those asserting that the district court failed to comply with the important strictures of Rule 11, which governs entry of guilty pleas. *See United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006); *cf. United States v. Pattee*, 820 F.3d 496, 504 (2d Cir. 2016) ("Rule 11, with its list of elements that the Supreme Court and Congress have determined should be addressed with every defendant, constitutes a required minimum in assuring that a defendant understands the nature of the charges, the penalties he faces, and the rights that he is giving up by entering a plea."). Thus, if we are not assured that a defendant's plea was voluntary and knowing, we will not enforce any waivers provided in the related plea agreement.[4] If the district court adequately complied with Rule 11, however, an appeal waiver contained in a plea agreement may be enforceable. If so

---

[3] The appeal and collateral attack waivers contained in Lloyd's written plea agreement explicitly exclude ineffective assistance claims.

[4] In a recent summary order, we rejected out-of-hand the very waiver argument that the government advances here. *United States v. Coffin*, 713 F. App'x 57, 59 n.1 (2d Cir. 2017) (summary order) (citing *Adams*, 448 F.3d at 497).

here, the appeal waiver would bar Lloyd's two *Pinkerton*-based claims. We therefore address Lloyd's Rule 11 challenges before we turn to his other contentions.

**I.      Rule 11**

As courts have long emphasized, "[a] guilty plea is no mere formality, but a 'grave and solemn act.'" *United States v. Arteca*, 411 F.3d 315, 319 (2d Cir. 2005) (quoting *United States v. Hyde*, 520 U.S. 670, 677 (1997)). Indeed, "[t]he fairness and adequacy of the procedures on acceptance of pleas of guilty are of vital importance in according equal justice to all in the federal courts." Fed. R. Crim. P. 11 advisory committee's note to 1966 amendments. Among other requirements, the Rule specifies that, "[b]efore the court accepts a plea of guilty[,] . . . the court must address the defendant personally in open court" and "must inform the defendant of, and determine that the defendant understands," a list of fifteen elements, including certain rights the defendant has agreed to waive, the range of possible sentences the defendant may receive, and, most relevant here, "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1). The interactions between the district court and the defendant that Rule 11 directs are "a mandated part of the guilty plea procedure, . . . because the drafters of Rule 11 clearly deemed that advising the defendant of [the matters in the Rule] was necessary for a guilty plea to be considered knowing and voluntary." *United States v. Rodriguez*, 725 F.3d 271, 277 n.3 (2d Cir. 2013).

A district court's Rule 11 obligations, then, while seemingly routine, and comprised of exchanges that may appear rote, should not be casually discharged: they are a serious matter. Close and regular adherence to the Rule's demands bears heavily on the legitimacy of the plea-bargaining system as a whole, a system that in recent times has come to resolve the prosecutions of the vast majority of federal defendants. *See*

10

*Missouri v. Frye*, 566 U.S. 134, 143 (2012) ("Ninety-seven percent of federal convictions . . . are the result of guilty pleas."). Accordingly, courts have "adopted a standard of strict adherence to Rule 11, and examine critically even slight procedural deficiencies to ensure that the defendant's guilty plea was a voluntary and intelligent choice, and that none of the defendant's substantial rights has been compromised." *Rodriguez*, 725 F.3d at 277 n.3 (internal quotation marks omitted).

For this reason, even when on plain error review we have affirmed judgments of conviction presenting Rule 11 issues, we have noted with increasing concern the tendency of some courts within our Circuit to stray from rigorous compliance with the Rule, and even to adopt practices at odds with the Rule's explicit directives. *See Pattee*, 820 F.3d at 503; *United States v. Gonzales*, 884 F.3d 457, 462 n.1 (2d Cir. 2018) (per curiam). Lloyd's appeal presents another such case, and we write this opinion—instead of resolving this matter by unpublished summary order—to underscore for district courts accepting pleas the importance of close adherence to the Rule's requirements. The Rule means what it says: before accepting a guilty plea, the District Court *must personally inform* the defendant about the listed consequences of his guilty plea and *ensure* that the defendant understands them. District courts would do well to re-assess their practices in this regard, and compare with those of other colleagues in an effort to conduct a meaningful and rigorous interchange with defendants appearing before them. Here, although the district court touched on many of the matters subject to Rule 11 directives in its colloquy with Lloyd, that rigorous compliance did not occur as to a critical element.

As noted above, Lloyd asserts that the District Court failed to comply with Rule 11(b)(1)(G) and Rule 11(b)(3), and that its failures warrant vacatur of his conviction

11

on the firearm count. Rule 11(b)(1)(G) calls for the district court to inform the defendant of and ensure "that the defendant understands . . . the *nature of each charge* to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G) (emphasis added). Rule 11(b)(3) focuses on the court's *own* careful determination, before entering judgment on a guilty plea, "that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3).

Lloyd did not identify either of these claimed errors in the District Court at any time. Had he (or the government) done so, of course, the District Court could have rectified the error at the time. Absent that timely objection, we review the District Court's actions for plain error only, as we mentioned above. *See United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006).

To satisfy the plain error standard, Lloyd must demonstrate that "(1) there was error, (2) the error was plain, and (3) the error prejudicially affected his substantial rights"; if such error is demonstrated, we will reverse, still, only when (4) "the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and brackets omitted). In the Rule 11 context, we have interpreted the third prong of the plain-error test to require that a defendant show "a reasonable probability that, but for the error, he would not have entered the plea." *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). This is a heavy burden to bear, and its weight tends to reduce the ultimate effect of failures to comply with the Rule's demands. But these failures are significant, and we highlight their importance here, even while concluding that, in this instance, the District Court's error does not provide a basis for permitting Lloyd to withdraw his guilty plea.

12

**A.** <u>Rule 11(b)(1)(G): Lloyd's understanding of the nature of the charged offense</u>

With respect to the District Court's Rule 11(b)(1)(G) obligation to ensure that Lloyd understood "the nature of each charge," we begin by addressing the first prong of the plain error standard. We conclude that the court committed error (although, as discussed further below, we need not decide whether this error was "plain" under the second prong). Importantly, Rule 11(b)(1) requires that the court "address the defendant personally in open court." During that address, "*the court must inform*" a defendant of the matters listed in Rule 11(b)(1) before it accepts a guilty plea. The Rule's text forecloses the possibility that the court may satisfy its Rule 11 obligation to "inform" the defendant of those matters and to ensure that the defendant understands them merely by making a general mention of information set forth in a written plea agreement. Nor is it consistent with the Rule for the District Court to have "generally referenced the charges during the change of plea hearing," as the government suggests here. Appellee's Br. 32–33.

Our decision in *United States v. Blackwell*, 199 F.3d 623 (2d Cir. 1999) (per curiam), is instructive as to the crucial nature of this exchange. During the change-of-plea hearing in that case, the government "stated the facts that would have proved [defendant]'s guilt at trial." *Id.* at 625. The judge "asked [the defendant] if he was a member of the conspiracy, and if he had participated in the conspiracy," and the defendant "answered both questions in the affirmative." *Id*. The defendant also "stated, in response to the judge's queries, that he had read and understood the plea agreement," and "counsel stated that he had spent several hours with [the defendant] explaining the plea agreement and the charges to" him. *Id.*

13

Despite the detail of the *Blackwell* colloquy—a colloquy that was, in relevant part, significantly more extensive than that conducted by the District Court in this case—we concluded that the court did not satisfy its Rule 11 obligation to "inform the defendant of, and determine that the defendant understands, the nature of the charge to which the plea is offered." *See id.* (emphasis and alteration omitted) (quoting Fed. R. Crim. P. 11(c) (1996)).[5] Accordingly, we vacated the defendant's conviction, emphasizing that "a district court judge must personally question the defendant to confirm that he possesses the requisite understanding." *Id.* at 626.

Acknowledging, still, that courts are "not required to follow any particular formula" in satisfying their obligation, we explained that the district court in *Blackwell* had fallen short of its Rule 11 obligation because it: (1) "never asked [the defendant] whether he understood the nature of the offense to which he was entering a guilty plea"; (2) "did not itself explain the elements of the conspiracy to [the defendant], nor did it read the indictment to him"; and (3) "did not ask the defendant to describe his participation in the offense," *id.* (internal quotation marks omitted)—all of which, depending on the facts of the case, might have permitted the district court to conclude with the requisite certainty that the defendant understood the "nature of the offense" of conviction, as required by Rule 11. For these reasons, we decided that the district court did not have "sufficient information to establish that [the defendant] understood the meaning of his plea." *Id.*

---

[5] Rule 11 was substantially amended in 2002. *See* Fed. R. Crim. P. 11 advisory committee's note to 2002 amendments. The version of Rule 11 in effect at the time of the *Blackwell* guilty plea, however, mirrored in relevant part the current Rule 11(b)(1)(G). *Compare* Fed. R. Crim. P. 11(c)(1) (1996), *with* Fed. R. Crim. P. 11(b)(1)(G) (2002), *and* Fed. R. Crim. P. 11(b)(1)(G) (2015).

14

So too here. The District Court did not explain to Lloyd the elements of the crimes to which he was pleading guilty and failed entirely to ask Lloyd to describe his "participation in the offense," *id.*, much less ask him to describe his conduct in sufficient detail for the court to be certain that he understood the nature of the offense to which he was pleading guilty. Thus, just as the combination of counsel's representation that he explained the charges to the defendant and the government's statement of the facts it would prove at trial was insufficient to satisfy this part of Rule 11 in *Blackwell*, the District Court's query to Lloyd, asking whether he admitted the "facts contained in th[e] plea agreement," AA 56, fell short of the mark. This omission had particular significance with respect to the co-conspirator liability under the *Pinkerton* theory that Lloyd was accepting as to the firearms charge, and that Lloyd now attempts to challenge on appeal. Thus, the District Court's failure here to explain the elements of the crime to Lloyd, or even to ask the government to articulate them, gives rise to error.[6]

Reading the elements of a crime to a defendant "is not a difficult task," *Pattee*, 820 F.3d at 503, but it is essential. We urge the District Court in the strongest possible

---

[6] We are not outliers among the circuit courts in stressing the need for strict compliance with this part of Rule 11. Many of our sister circuits also interpret Rule 11 as requiring district courts, on the record, to ensure that defendants understand the elements of the offenses to which they are pleading guilty, and imposing consequences for failures in this respect. *See United States v. McCreary-Redd*, 475 F.3d 718, 725 (6th Cir. 2007) (vacating guilty plea for failure to comply with Rule 11(b)(1)(G) where court "did not question [defendant] to determine if he understood" elements of crime); *United States v. Simmons*, 736 F.3d 1139, 1142 (8th Cir. 2013) (per curiam) (affirming on plain error review, despite holding that district court violated Rule 11 by failing to "accurately inform [defendant] of the elements of the § 924(c) offense at the change-of-plea hearing"); *United States v. Carillo*, 860 F.3d 1293, 1302–04 (10th Cir. 2017) (remanding for failure to comply with Rule 11(b)(3), and noting that "[i]n most cases, to comply with the dictates of Rule 11(b)(1)(G), a district court must recite the elements of the offense" and that, "[a]t a minimum, Rule 11(b)(1)(G) requires that a district court ensure the defendant understands the essential elements of the offense to which he pleads guilty" (internal quotation marks omitted)).

15

terms to take steps—by using a checklist, script, or other tool for conducting change-of-plea hearings, and reviewing its current practices—to ensure its regular and rigorous compliance with Rule 11 and to avoid casting unnecessary doubt on the voluntary and knowing nature of the guilty pleas that it accepts. *See id.* at 503 & n.3 ("Technical errors can be avoided if a district or magistrate judge has a standard script for accepting guilty pleas, which covers all of the required information."); *Rodriguez*, 725 F.3d at 277 n.3 ("[I]t should be a simple matter for district and magistrate judges to avoid any error by adhering literally to the script required by the Rule . . . ."); *Gonzales*, 884 F.3d at 462 & n.1 ("[D]istrict courts can easily use a standard script for accepting guilty pleas, which covers all of the required information to ensure their conformity with the Rule." (internal quotation marks omitted)).[7] Rule 11 failures "are unacceptable." *Gonzales*, 884 F.3d at 462 n.1.

Although we conclude that the court erred, Lloyd's application for vacatur does not succeed because he has not shown "a reasonable probability that, but for the error, he would not have entered the plea." *Torrellas*, 455 F.3d at 103 (internal quotation marks omitted). He thus has not demonstrated that "the error prejudicially affected his substantial rights." *Id.* (internal quotation marks omitted). In light of this disposition, we need not decide whether the District Court's error was "plain" within the meaning of plain error review.

---

[7] Nonetheless, we frequently see cases presenting Rule 11(b)(1) challenges to plea allocutions. *See also United States v. Zea*, 659 F. App'x 32, 34–35 (2d Cir. 2016) (summary order) (noting ease of Rule 11 compliance if court developed change-of-plea script); *United States v. Richards*, 667 F. App'x 336, 338 (2d Cir. 2016) (summary order) (same); *United States v. Coffin*, 713 F. App'x 57, 60 n.2 (2d Cir. 2017) (summary order) (same); *United States v. Harper*, — F. App'x —, No. 16-754-cr, 2018 WL 2670508, at *3 n.3 (2d Cir. June 5, 2018) (summary order) (same).

Lloyd fails to demonstrate that, had the District Court articulated each element of the offense to which he pleaded guilty, he would not have entered the plea. Although Lloyd presents a colorable argument that he might have been confused about the complexities of the *Pinkerton*-based firearms charge, in which he bears criminal liability for his codefendant's firearms possession, he has been unable to identify any aspect of the record suggesting that, had the District Court explicitly reviewed the elements of that liability with him at his change-of-plea hearing, he would not have entered a plea of guilty to that count. We therefore reject Lloyd's argument that his conviction should be vacated as a result of the District Court's failure to comply with Rule 11(b)(1)(G); *cf. Gonzales*, 884 F.3d at 462 (on "harmless error" review, defendant sufficiently demonstrated that he would not have entered a guilty plea if his plea colloquy had included all the elements required under Rule 11).

One final point: Although it took a different position in its brief, at oral argument on appeal the government repeatedly—and prudently—stopped short of characterizing the plea colloquy as satisfying Rule 11(b)(1)(G). While we appreciate the government's candor, its change of position raises its own set of concerns. In *Pattee*, we recently reminded litigants that "[Rule 11] failures are not attributable solely to judges": "Prosecutors and defense attorneys also have an obligation to make sure that the Rule is followed." 820 F.3d at 504. We advised that prosecutors should "alert the judge to any provisions that have been missed," both to "protect the defendant's rights in the interest of justice, and to protect the record and avoid time-consuming appeals by defendants who subsequently suffer 'buyer's remorse' and wish they had not pled guilty." *Id.* That Rule 11 errors "do[ ] not frequently require vacatur of a plea," *id.* at 503, does not diminish a prosecutor's obligation in this respect, as it does not relieve district courts of

17

their related duties.[8] For this reason, we underscore here our prior admonition to counsel that they are expected to help district courts "follow the minimal procedures put in place to protect defendants' rights." *id.* at 504–05.

B.    Rule 11(b)(3): Determining the factual basis for the plea

We next consider Lloyd's claim that the District Court did not comply with Rule 11(b)(3)—which requires the court to determine whether there is an adequate factual basis for the plea—and that this failure, too, requires vacatur of his conviction.

To be sure, and as described, the plea colloquy in this case was no paragon, and in recent years, we have expressed our disappointment with practices of the sort used here in this critical colloquy. *See United States v. Coffin*, 713 F. App'x 57, 60 & n.2 (2d Cir. 2017) (summary order) (same district judge); *United States v. Hollingshed*, 651 F. App'x 68, 71 (2d Cir. 2016) (summary order) (same district judge). Rather than asking Lloyd during the change-of-plea hearing to answer, yes or no, and with no further discussion, whether he admitted the facts contained in the written plea agreement, the better practice by far (as the government agreed at oral argument) would be for the District Court to ask Lloyd to explain in his own words exactly what he did that made him guilty of the crimes charged. Or, the court could even have had the government

---

[8] Although the ultimate obligation to comply with Rule 11 falls on district courts, if counsel repeatedly fails to call the courts' attention to Rule 11 errors, the failure might needlessly permit "[a] recurring pattern of failure by a district judge to comply with Rule 11 [that] could undermine faith in the judiciary." *Pattee*, 820 F.3d at 505. In other words, defendants might more easily satisfy their currently unforgiving plain error burden if the unflagged Rule 11 errors become sufficiently numerous that they "seriously affect[ ] the fairness, integrity or *public reputation of judicial proceedings*." *Torrellas*, 455 F.3d at 103 (emphasis added). At a certain point, that reputation may be put in sufficient jeopardy that plain error review will more frequently result in vacatur.

18

describe in front of Lloyd the factual predicate for the offense, and sought Lloyd's objections or assent to the description.

On this record, however, we conclude that the District Court did not plainly err in entering judgment on Lloyd's guilty plea. Unlike Rule 11(b)(1), which requires that the court advise a defendant of certain matters during a change-of-plea hearing in open court, Rule 11(b)(3) imposes on a district court an obligation that it must satisfy merely *"[b]efore entering judgment* on a guilty plea,"* without any mention of a requirement that the court make its finding on the record. Under Rule 11(b)(3), the District Court had "to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *Pattee*, 820 F.3d at 509 (internal quotation marks omitted). In doing so, the court was not limited to considering the materials available at the time of the change of plea. Rather, it was permitted to look to "the defendant's own admissions," and to "statements of the defendant, of the attorneys from the government and the defense, or of the presentence report when one is available." *Id.* (internal quotation marks and alteration omitted). Here, the facts outlined in the written plea agreement (facts that Lloyd orally admitted to the court were true during the change-of-plea hearing[9]) and described in the presentence report (which the District Court expressly adopted at sentencing[10]) provided ample ground for

---

[9] Because the District Court could also consider the presentence report in concluding that Lloyd's plea was supported by the requisite factual basis, we need not opine as to whether Lloyd's monosyllabic admission of the facts in the written plea agreement is independently sufficient.

[10] We note that, at sentencing, the District Court failed to confirm that Lloyd had the opportunity to review the presentence report with counsel. *See* Fed. R. Crim. P. 32(i)(1)(A) ("At sentencing, the court: [ ] must verify that the defendant and the defendant's attorney have read

19

the court's implicit determination at the time it entered judgment that there was a "factual basis for the plea." Fed. R. Crim. P. 11(b)(3).

In sum, we reject Lloyd's contention that the District Court committed Rule 11 errors that warrant vacatur of his conviction.

## II. Remaining matters: *Pinkerton* and ineffective assistance of counsel arguments

In addition to his Rule 11 arguments, Lloyd asks us to overrule *Pinkerton* and urges, in the alternative, that, to support a conviction, *Pinkerton* liability must be specifically charged in the indictment. He also asserts that his convictions should be vacated because his counsel was constitutionally ineffective with respect to his entry of a guilty plea.

Lloyd's *Pinkerton* arguments are barred by the appeal waiver that he agreed to in his plea agreement. The District Court explained that waiver during the change-of-plea hearing; Lloyd also affirmed under oath that he had read and discussed the plea agreement with counsel. *See Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam) ("A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable.").[11] We therefore

and discussed the presentence report and any addendum to the report."). Lloyd has not argued on appeal, however, that this additional oversight provides a ground for reversal.

[11] At oral argument before our Court, Lloyd's counsel suggested that the Supreme Court's recent decision in *Class v. United States*, 138 S. Ct. 798 (2018), renders Lloyd's appeal waiver invalid with regard to any constitutional argument he may raise. The issue presented in *Class*, however, was whether "a guilty plea *by itself* bars a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal." 138 S. Ct. at 803 (emphasis added). The Supreme Court answered that question in the negative. *Id.* Lloyd's written plea agreement, by contrast, contained an express appeal waiver far broader than did the plea agreement at issue in *Class*. The latter "said nothing about the right to raise on direct appeal a claim that the statute of conviction was unconstitutional." *See id.* at 802. *Compare* AA 28 (plea

dismiss the appeal as to Lloyd's *Pinkerton* arguments. *See, e.g., United States v. Arevalo*, 628 F.3d 93, 101 (2d Cir. 2010) (dismissing appeal where defendant's arguments were barred by appeal waiver).

Lloyd's guilty plea would be invalid and his appeal waiver unenforceable if he prevailed on his claim that he received constitutionally ineffective assistance of counsel during his plea proceedings. *See Lee v. United States*, 137 S. Ct. 1958, 1964–66 (2017); *cf. United States v. Monzon*, 359 F.3d 110, 118–19 (2d Cir. 2004). Our established practice on direct appeal, however, when addressing ineffective assistance claims with regard to the district court proceedings, is to consider three options: we may "(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for [a] writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. DeLaura*, 858 F.3d 738, 743 (2d Cir. 2017) (quoting *United States v. Adams*, 768 F.3d 219, 226 (2d Cir. 2014) (per curiam)). When the facts necessary for resolution of the claim do not appear in the district court record, however, "our usual practice is not to consider the claim on the direct appeal, but to leave it to the defendant to raise the claims on a petition for habeas corpus under 28 U.S.C. § 2255." *United States v. Oladimeji*, 463 F.3d 152, 154 (2d Cir. 2006).

Here, the record is devoid of testimony or other evidence from Lloyd's prior counsel or otherwise regarding the representation provided Lloyd in the interactions

---

agreement text waiving, without qualification, right to appeal, *inter alia*, "[t]he convictions resulting from the defendant's guilty plea," "[a]ny sentence to a term of imprisonment of life or less," and "[a]ny sentence to a term of supervised release within the maximum permitted by law"), *with Class*, 138 S. Ct. at 802 (identifying specific "categories of rights that [defendant] expressly agreed to waive").

leading up to Lloyd's entry of the guilty plea and subsequent sentencing. We accordingly adhere to our "usual practice" and decline on this appeal to consider Lloyd's ineffective assistance claim. Lloyd is free to pursue that claim in a collateral proceeding.[12]

## CONCLUSION

For the reasons set forth above, the District Court's judgment is **AFFIRMED**, except that as to Lloyd's *Pinkerton* arguments, the appeal is **DISMISSED**.

---

[12] We express no view on the merits of any such petition, or with regard to whether the petition would comply with the applicable procedural requirements imposed by 28 U.S.C. § 2255.