22-2709-cr
*United States v. Fofaneh*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of October, two thousand twenty-four.

Present:

> GUIDO CALABRESI,
> WILLIAM J. NARDINI,
> *Circuit Judges*,
> PAUL A. ENGELMAYER,
> *District Judge*.[1]

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                    22-2709-cr

MORICE COOPER, a/k/a JACOB,

> *Defendant*,

VANNMAH FOFANEH, a/k/a OMAR ABDUL TIMBO, a/k/a ABDUL OMAR TIMBO,

> *Defendant-Appellant*.

---

---

[1] Judge Paul A. Engelmayer, United States District Judge for the Southern District of New York, sitting by designation.

For Appellee:                          NICHOLAS J. MOSCOW, Assistant United States Attorney, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

For Defendant-Appellant:               LUCAS ANDERSON, Rothman, Schnieder, Soloway & Stern, LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Pamela K. Chen, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Vannmah Fofaneh appeals from a judgment of the United States District Court for the Eastern District of New York (Pamela K. Chen, *District Judge*) entered on October 6, 2022, sentencing Fofaneh to 32 months of imprisonment, to be followed by three years of supervised release. Fofaneh pleaded guilty before United States District Judge Joanna Seybert to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. The fraud scheme involved the defendants falsely claiming that they had millions of dollars in bleached currency that had been smuggled out of another country, which they could convert back into usable bills if the victim (who, unbeknownst to them, was an informant for law enforcement) could lend them a million dollars in currency to trigger a chemical process. Fofaneh now appeals both his conviction and sentence, arguing that the district court failed to: (1) personally inform Fofaneh of, or ensure that he understood, the nature of the crime to which he was pleading guilty; (2) determine whether there was a sufficient factual basis before entering judgment on his plea; and (3) make an individualized assessment of the search condition it imposed as part of Fofaneh's supervised release. We assume the parties' familiarity with the case.

## I.     Rule 11 Obligations

Fofaneh argues that the district court failed to comply with Federal Rules of Criminal Procedure 11(b)(1)(G) and 11(b)(3), and that its failures warrant vacating his conviction and setting aside his guilty plea.  Because Fofaneh did not raise either of these arguments before the district court, we review for plain error.  *United States v. Lloyd*, 901 F.3d 111, 119 (2d Cir. 2018).[2] Under that standard, Fofaneh "must demonstrate that '(1) there was error, (2) the error was plain, and (3) the error prejudicially affected his substantial rights'; if such error is demonstrated, we will reverse, still, only when (4) 'the error seriously affected the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006)). The third, "substantial rights," prong requires a defendant to show "a reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 120.

### a.  Rule 11(b)(1)(G)

Fofaneh argues that the district court plainly erred by failing to personally inform him of, or to ensure that he understood, the elements and nature of the charged wire fraud conspiracy, in contravention of Rule 11(b)(1)(G).  "The elements of wire fraud are: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the wires to further the scheme. Conspiracy to commit wire fraud requires merely the agreement between defendants to engage in the foregoing and an overt act by one of the conspirators in furtherance of the conspiracy." *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021).  It is true that Fofaneh's plea colloquy suffered from at least some of the deficiencies this Court previously identified in *Lloyd*, including the district court's failure to read the indictment, list the elements of the charge, or ask the government

---

[2]  Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

to do so. 901 F.3d at 120–21. However, any error was harmless because Fofaneh has failed to show that, had the court strictly complied with Rule 11(b)(1)(G), he would not have pleaded guilty.

First, the record shows that Fofaneh—who was represented by counsel—understood the nature of the charged offense. At the outset of the plea hearing, the district court asked Fofaneh whether he understood the elements of the charge against him—which the government had just described as "wire fraud conspiracy"—and Fofaneh responded, "Yes." App'x at 29. The court later asked Fofaneh to explain "what it is that you did that makes you guilty of this crime." *Id.* at 30. Fofaneh admitted that he "assisted" his co-defendant in "orchestrating a scheme to defraud [a] person of money," and that he knew doing so was wrong. *Id.* at 30–31. Fofaneh explained the fraud in detail: "To show how this scheme worked, I along with the person I was working with took 20 bills, and through a tr[ick], I turned into 60,000. In reality, this was just a tr[ick] and we never had the ability to magically turn one million dollars into three million, and we were trying to take the person's money." *Id.* at 31. The government described the overall structure of the fraud and Fofaneh's role in the scheme, which included engaging in sleight of hand to demonstrate to the victim the supposed process of restoring the blank paper into currency. *Id.* at 34–35. The government explained that Fofaneh's co-defendant and the victim "spoke on the phone regularly to coordinate the scheme," and that the phone calls "traveled in interstate commerce from New Jersey and Pennsylvania" to New York. *Id.* at 33–34. Regardless of any deviations from the procedure required by Rule 11, Fofaneh clearly understood what he was pleading guilty to.

Second, the strength of the government's evidence—and the absence of any apparent defense to that overwhelming evidence—also defeats any suggestion that Fofaneh would have proceeded to trial absent any error in his plea proceeding. Fofaneh and his co-defendant were "caught red-handed" showing the currency conversion scheme to an undercover agent. *Id.* at 38.

4

The government possessed evidence of the scheme that would have been exceedingly difficult for Fofaneh to refute at trial, including videos taken that plainly showed Fofaneh demonstrating the "magic trick" to defraud the undercover agent, messages between Fofaneh and his co-defendant celebrating their anticipated success with the scheme and discussing plans to expand their operation, and recordings of the co-defendant's interstate phone calls to set up the fraud, which would prove use of the wires.

Finally, Fofaneh repeatedly confirmed his desire to plead guilty, despite opportunities to withdraw his plea at any point during the district court proceedings. Fofaneh points to one moment during the plea hearing when the district court asked him whether he and his co-defendant "ma[d]e an agreement," to which he replied, "We didn't make an agreement. He wanted me to go with him, just to be on the safe side. That's it." *Id.* at 31–32. But the government immediately clarified that Fofaneh and his co-defendant had conducted the scheme jointly (even driving to Long Island together to visit their intended victim to show off their "trick"), and pointed out that it would not matter "whether they actually said I agreed to conduct this scheme." *Id.* at 33. This was a correct statement of the law. *See United States v. Svoboda*, 347 F.3d 471, 477 (2d Cir. 2003) ("A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct."). Having heard this exchange, Fofaneh did not ask to withdraw his plea. Upon transfer of the case to Judge Chen after the guilty plea but before sentencing, she held a status conference during which she confirmed that Fofaneh had pleaded guilty without the benefit of a plea agreement with the government, that he understood he had pleaded guilty to the charge in the indictment, and that he did not intend to withdraw his plea. At sentencing, Judge Chen confirmed that defense counsel and Fofaneh had read and discussed the Presentence Report ("PSR"), which restated the elements of wire fraud

5

conspiracy. Fofaneh raised no objections to the PSR, and again did not move to withdraw his plea even after having been informed in writing of the elements of his offense.

In short, Fofaneh has not demonstrated a reasonable probability that he would not have pleaded guilty, had the district court fully complied with Rule 11(b)(1)(G). Accordingly, there is no plain error that warrants disturbing his conviction.

### b. Rule 11(b)(3)

Fofaneh also argues that the district court failed to comply with Rule 11(b)(3), which requires the district court to determine that there is a factual basis for a guilty plea before entering judgment. The overarching requirement is that the court "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997). To make that determination, the court assesses "whether, based on the 'facts at its disposal' including but not limited to 'the defendant's own admissions,' the offense conduct satisfies the elements of the statute under which the defendant seeks to plead guilty." *United States v. Aybar-Peguero*, 72 F.4th 478, 486 (2d Cir. 2023) (quoting *Irizarry v. United States*, 508 F.2d 960, 967 (2d Cir. 1974)).

First, Fofaneh argues that the district court failed to elicit a sufficient factual basis for his plea because Fofaneh did not say anything to suggest he was aware of the cellphone calls made by his co-defendant for the purpose of executing the charged fraud scheme. While it is true that Fofaneh did not affirmatively state that he was aware of the calls, wire fraud conspiracy requires only that the "use of the wires was reasonably foreseeable." *United States v. Zichettello*, 208 F.3d 72, 105 (2d Cir. 2000). Here, where Fofaneh and his co-defendant were located in New Jersey, the victim was located in Long Island, arrangements were made to meet in Long Island, and Fofaneh traveled with his co-defendant to Long Island multiple times to meet with the victim, the

district court had a sufficient factual basis to find that the co-defendant's placement of interstate wire communications to make those arrangements was reasonably foreseeable to Fofaneh.

Next, Fofaneh argues that the district court failed to elicit a sufficient factual basis for his plea because, as noted above, Fofaneh denied having an "agreement" with his co-defendant. App'x at 32. As an initial matter, Fofaneh's statement that he did not have "an agreement," read in context, could fairly be interpreted by the court as Fofaneh simply stating that he and his co-defendant did not make an explicit statement of agreement. Regardless, the district court had an ample factual basis to find that Fofaneh and his co-defendant in fact agreed to commit wire fraud, even if their agreement was tacit rather than explicit. *See Svoboda,* 347 F.3d at 477. At the allocution, Fofaneh stated he "*assisted* someone else in orchestrating a scheme to defraud [a] person of money," App'x at 30 (emphasis added), and in the remainder of his allocution, made it clear that he acted in concert with his co-defendant, with the shared purpose of defrauding the victim, *id.* at 31 (explaining that to "show how this scheme worked, *[he] along with the person [he] was working with*" demonstrated the fake currency conversion process (emphasis added)). The government also proffered, and Fofaneh did not dispute, that Fofaneh and his co-defendant were recorded conducting the fraud scheme together and that they drove from outside New York to conduct the scheme in Long Island together. And so, regardless of whether Fofaneh and his co-defendant expressly articulated their agreement to conduct the scheme, their concerted actions over an extended period of time clearly manifested their shared intent to conduct the scheme as a "joint enterprise." *See Svoboda*, 347 F.3d at 477.

Accordingly, the district court did not err in determining under Rule 11(b)(3) that there was a sufficient factual basis for Fofaneh's guilty plea.

## II.     Search Condition

Next, Fofaneh challenges the district court's imposition, as part of his supervised release, of a search condition requiring Fofaneh to submit, among other things, "his person, property, . . . [and] electronic communications" to a search upon "reasonable suspicion" that Fofaneh has violated a condition of his supervised release and that the areas to be searched contain evidence of the violation. App'x at 113. Fofaneh argues that the district court erred by imposing the search condition without making an individualized assessment or providing a sufficient explanation for the condition. Normally, we review a challenge to a condition of supervised release for abuse of discretion, but because Fofaneh did not object below, we review only for plain error. *See United States v. Haverkamp*, 958 F.3d 145, 151 (2d Cir. 2020).

A district court is required to make an "individualized assessment" when determining whether to impose special conditions of supervised release. *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). There must be a reasonable relationship between the factors considered by the district court and the challenged condition. *See id.* "[U]nless obvious from the record, the district court must articulate its reasons for imposing the special condition; its failure to do so is error." *United States v. Bleau*, 930 F.3d 35, 43 (2d Cir. 2019).

We conclude that the court's remarks, in their totality, adequately explain its reasons for imposing the search condition. Before imposing the condition, the court laid out Fofaneh's lengthy history of committing fraudulent schemes and "harped on . . . the need for specific deterrence," App'x. at 97, finding "that [Fofaneh] in particular need[ed] to be sent a very strong message that [he] can't engage in fraud anymore," *id.* The district court emphasized its concern that Fofaneh would "re-offend[] in some way," *id.* at 101, especially through "smaller scale frauds that . . . [would not] necessarily attract the attention of the federal authorities," *id.* at 100, and expressed

8

its desire "to be sure that his conduct post release is monitored," *id.* at 101. The court explained that it was "imposing this search condition to ensure that the probation department has the means to supervise and ensure compliance with respect to the terms of Mr. Fofaneh's . . . supervised release." *Id.* at 103. It is clear from the record that district imposed the search condition based on its individualized assessment of Fofaneh's propensity to reoffend. The district court did not err in imposing a search condition that would allow the Probation Office to closely monitor Fofaneh, and in particular to ensure that he was not returning to his practice of engaging in "smaller scale frauds" that might otherwise escape detection.

\* \* \*

For the reasons stated above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk